ALFRED DE WITT, HENRY A. HARRISON, EDWARD P. FLINT, JAMES P. FLINT, and DANIEL H. HASKILL, *v.* THE CITY OF SAN FRANCISCO, STEPHEN R. HARRIS, Mayor, JAMES W. STILLMAN, Comptroller, and SMYTH CLARK, Treasurer of the said City.

The authority by act of the legislature to erect a court house and gaol, would necessarily embrace the power to purchase the land on which to erect them.

The power to purchase "*any property*" in connection with a given object, includes the power to purchase property both real and personal necessary to the object. The omission of the word "real" does not limit the power so as to exclude the purchase of real property from its exercise.

Two corporations cannot hold land together as *joint-tenants*.

But the books do not afford any instance in which the right to hold as tenants in common, either with themselves or with natural persons, is denied to corporations.

No one of the reasons which work a want of capacity to hold as joint-tenants would prevent them holding as tenants in common.

The Constitution of California requires that "every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title." A law is constitutional in view of this section, where the subjects embraced in the same statute, and not expressed by the title, have congruity or proper connection.

APPEAL from the District Court of the Fourth Judicial District.

The complaint stated that the plaintiffs are tax-payers, &c., of

19

the city of San Francisco; and that at a meeting of the common council of said city on the 4th June, 1852, an ordinance was passed, No. 234, authorizing the purchase in connection with the county of San Francisco, of the *Jenny Lind Theatre* and Parker House property, for city and county purposes—the ordinance specifying the purpose to be to convert the same into a City Hall; and the surveyor of the city, with the judiciary committee of both boards of aldermen, were authorized by the ordinance to make the purchase—provided, the City, for its share of the purchase, should not pay or become liable to pay a sum exceeding $100,000.

That another ordinance was passed by the said common council on the 2d July, 1852, "To effectuate the purchase of an equal undivided one-half part of the property known as the Jenny Lind and Parker House property, for a City Hall"—which provides, that upon a proper conveyance of the said property (the equal undivided half part thereof), to be used by the City as tenants in common, with the county of San Francisco as owners of the other undivided half, &c., being executed and delivered, &c. The city comptroller is authorized and instructed to draw amounts on the city treasurer for the purchase-money, &c., for the sum of $100,000, &c., in the manner prescribed—but prohibiting the warrants so drawn to be receivable for licenses. The complaint then proceeds to state that the several officers of the City, the defendants to this bill, will, in the discharge of their respective official duties perform the several acts and duties required by the said ordinance, unless restrained by order of this Court. And complainants charge that the City of San Francisco has no legal power to purchase any land or real estate whatever, or to appropriate any money for the purpose of purchasing the property mentioned in the said ordinance, and that such appropriation is illegal. And charge that the said common council of the said City, by passing the said ordinance are about to create debts and liabilities, which, in the aggregate, with all former liabilities (exclusive of the debt of the said City, with interest thereon, which existed on the 15th day of April, 1851,) will exceed the sum of $50,000 over and above the annual revenue of the said City, without providing by the said ordinances, or either of them, or any other ordinance, the ways and means, exclusive of loans,

for the payment of the interest as it falls due, or the principal thereof within twelve years—and without providing for submitting the said ordinances to the people.  And charge that the said common council, by virtue of the said ordinance, are about to emit bills of credit without providing for their approval by the people: —all of which the complaint further charges is in violation of the city charter and of the statutes of California and illegal. That the commission of the act aforesaid will increase the taxes, &c., to the injury of the complainants, &c.

And prays that the City may be restrained and enjoined from taking any other steps towards completing the said purchase, &c. And that the defendants, the comptroller, the treasurer, &c., be enjoined and restrained from performing the duties required of them respectively, by the said ordinance.

The Court ordered that the defendants show cause on the 10th of July next, why an injunction should not issue according to the prayer of the complaint; and in the mean time, that the " City of San Francisco" and the comptroller and treasurer, &c., thereof, desist and refrain from taking any further steps towards completing the purchase of the property mentioned in the complaint.

The defendants filed their answer July 10th, 1852, in which they deny that the City has no legal power to purchase any land or real estate whatever, or to appropriate any money belonging to the City to such purpose.  And deny that the appropriation to the purchase of the property, mentioned in the ordinance recited in the complaint, is illegal or foreign to the powers of the said City.  The answer further specifically denies all the other charges stated in the complaint.  And then proceeds to aver, that by the laws and statutes of the State of California, and particularly by the "Act to incorporate the City of San Francisco," passed April 1st, 1851, and by an act, entitled "An Act to authorise the Common Council of the City of San Francisco to purchase or erect a City Hall," passed April 10th, 1852; the said City, and the said common council thereof, had and have the legal right, &c., to effectuate the said purchase, and to make payment therefor, &c.  And that the said common council, at the same time of passing the said ordinance secondly recited in the said complaint, did also pass another ordinance, which the

answer sets forth, entitled, an "Ordinance making appropriations of money for public buildings," which appropriates $110,000 for the purchase and fitting up of public buildings, "which shall be known and designated as the Building Fund." Which ordinance and appropriation of $110,000, are the same mentioned in the second section of the said ordinance, secondly recited in the said complaint.

That the Board of Supervisors of the County of San Francisco, did, on the 3rd of June, 1852, pass an order for the purchase of the other equal undivided half of the said property, for county and city purposes, and made provision for payment thereof.

That the annual revenue of the City for the year ending June 30th, 1851, was $250,000, and for the year ending June 30th, 1852, was $612,595, and for the present fiscal year, (1853) will greatly exceed either of the two preceding; and that there is now outstanding and unpaid, of former debts, &c., of the City, (exclusive of the debt existing on the 15th April, 1851, and interest thereon) only the sum of $52,714.89.

That after payment out of the revenue of the City for the current year, all former debts, &c., (exclusive of the debt existing on the 15th of April, 1851, with interest thereon) and payment of current expenses, there will remain of said annual revenue for the current fiscal year, a balance sufficient to pay the said amount so appropriated for the purchase of the said property by the said City.

That the purchase, &c., for a City Hall, is both expedient and necessary, &c. And that the City is now paying high rents for buildings used as court-rooms, common council chambers, &c., to the amount of $46,300 a year, all which will cease when a City Hall is purchased, &c.

That the actings of the City, &c., in the premises, are not illegal, nor inexpedient; and they ask the injunction issued, &c., to be dismissed.

After hearing the parties by their counsel, the Court, on the 12th July, made the rule absolute, enjoining the defendants from taking any further steps towards completing the purchase of the property in the complaint mentioned.

From this order the defendant's appealed.

Counsel for appellant argued as follows :

The City of San Francisco has power to purchase the property in question. Every corporation has such power at common law. 2 Kent's Com. 281. It is given in this State by statute to *every* corporation. Statutes of 1850, ch. 128, sect. 1. Sub-division, 4, p. 347. The City has it by its Charter. Laws of 1851, ch. 84, sect. 1, to 357. This land is in the City, and so not within the exception in sect. 1, art. 1, of the charter. It has this power also, by the "Act authorising the Common Council of the City to purchase or erect a City Hall," passed 10th April, 1852. Allen *v.* Scott, 21 Pick. 25, and cases cited. Gibson *v.* Brockway, 8 N. H. 465, and cases cited. Crosby *v.* Brandbury, 2 App. 61; 20 Maine R. Hilton *v.* Gilman, 5 Shepley, 263. 2 Hilliard's Real Prop. 338, sects. 48, 49, 50.

This purchase will not conflict with Art. III. sect. 5, of the City Charter, against contracting debts beyond a certain amount; for by the act of April 10th, 1852, the grant of power is absolute; and this was passed a year after the charter. This confers additional unrestricted power on the City; and must be so construed, or it is wholly inoperative.

The warrants proposed to be issued, are not "*bills of credit*" within the prohibition of Art. 3, sect. 7, of the City charter. They are proposed to be drawn on a particular fund, set apart for their payment; to which the term does not apply. A bill of credit is a promissory note, issued on the credit of the drawer. Briscoe *v.* The Bank of Kentucky, 11 Peters, 257. 321, 322. 327. These warrants are not "representatives of value," for their value is contingent on the sufficiency of the fund to pay them. The holder can look to this fund alone, and not to the City. The City can never be made liable for their payment, unless by wrongfully interfering with the fund upon which they are drawn; and then only by a special action for the wrongful interference, and not on any original responsibility on the warrants. They are neither bills of exchange nor promissory notes. Cocke *v.* Satterly, 6 Cowen, 108. Leiber *v.* Goodrich, 5 Cowen, 186. Thomson *v.* Swan, 23 Wend. 71. Keith *v.* Jones, 9 J. R. 120. Judah *v.* Harrison, 19 Johns. 144.

The eighth section of the said Act authorizes the issuing of warrants upon the treasury, and prescribes the mode of doing it,

and the substance and form of the warrants; and the seventh and eighth sections being *in pari materia*, must be construed together, and the latter will control the former. The legislature will not be charged with the absurdity of prohibiting the issue of bills of credit, &c., and then in the next section providing for the mode of issuing of them, which is the case, if warrants drawn on the treasury come within the description of the paper prohibited by the seventh section. Warrants drawn on a fund previously appropriated, are therefore not bills of credit within the prohibition.

But the warrants proposed to be issued comply with the charter· City Charter Art. 3d, sects. 7 & 8. If negotiable, this does not vitiate them. Kelly *v.* The Mayor of Brooklyn, 4 Hill, 263. Nor does the fact that they are payable *in futuro.* They are not receivable, as appears on their face, for licenses nor for any other city taxes. City Char. Art. 4th, sect. 9. Laws 1851, ch. 6, sect. 47, p. 160. Laws 1851, ch. 88, sect. 4, p. 388.

It is objected that two corporations cannot hold lands as joint tenants or tenants in common.

As to joint tenancy, the unities incident to the creation of this mode of title are wanting; and there can be no right of survivorship when, as in corporations, the parties are each of perpetual duration.

The books do not afford any instance in which the right to hold lands as tenants in common, either with each other or with natural persons, is denied to corporations. And on the contrary abundant are the cases of corporations holding by this description of estate.

Angel & Ames on Corporations, 150, sec. 7. 1 Kyd, 72. 1 Cruse, 391, sec. 6. New York and Sharon Canal Company *v.* Fulton Bank, 7 Wend. 412. 1 Kyd. 108.

No brief is on file for Respondent.

WELLS, Justice, and ANDERSON, Justice, delivered each an opinion.

WELLS, Justice.—This case comes before us on an appeal from an order of the District Court of the Fourth Judicial District, denying a motion to dissolve an injunction issued out of that Court, restraining the defendants from completing an alleged

contemplated purchase of certain property for the use of the county of San Francisco; and the principal question involved in the controversy is, whether the board of supervisors of said county are invested by law, with power to purchase for the county such real estate as the complaint in the original action alleges they are about to purchase, and which the order of the Court below restrains them from doing?

The appellants claim to derive such power from a law passed April 29th, 1851, entitled "An act to create a board of supervisors for the county of San Francisco, and define their duties," and from a law passed May 2d, 1852, entitled "An act to create a board of supervisors for the counties of this State, and to define their duties and powers."

The first mentioned act provided that "there shall be within and for the county of San Francisco, a board of supervisors, to consist of the mayor and board of aldermen of the city of San Francisco, and of three members to be elected by the rest of the county in the manner provided for." By this act no power was especially conferred to purchase property, or to erect, or lease, or otherwi se provide for public buildings, court house, or gaol This important omission was however supplied by the act of May 2d, 1852, in the following language. Section 7. "The board of supervisors shall have power, with the consent of a majority of all its members, to purchase or receive any property for the use of the county; to erect or lease a court house, gaol, and such other buildings as may be necessary for the use of the county:" and this act was made applicable to the county of San Francisco by the eighteenth section thereof.

It was said by the district judge in deciding the motion in the Court below from which the appeal is brought, that admitting that the act in question applies to the present board of supervisors of the county of San Francisco, yet that board has not the power to make the purchase, because the words "purchase, or receive any property necessary for the use of the county," taken in connection with past legislation on the same subject, and the words to "erect or lease a court house, gaol, and other public buildings," which immediately follow them, in a separate and distinct sentence, must be interpreted as only intending to confer the power to purchase such personal property as should be neces-

sary for the county in its ordinary business; and that in reference to the important subject of public buildings, the legislature has undertaken to provide specially, that the power of the county shall be limited to erecting or leasing such buildings." But it appears to us that the very opposite of this would be the fair and proper interpretation of the law; that having given the board the power to purchase any property, together with the further power of erecting a court house, gaol, and other buildings, the conclusion would appear to be that it was intended to confer the power to purchase, at least the land on which to erect the court house, &c. And the fact that the words "to purchase any property," and "to erect or lease" public buildings, are used in separate and distinct sentences, tends rather to establish than destroy this conclusion.

Indeed it cannot seriously be doubted, that if the power to purchase any property had not been given in express words, yet that the authority to erect a court-house or jail, would necessarily embrace the power to purchase the land on which to erect it; the land whereon to build it, being no less essential than the stone and material to build it with. But in addition to this, and in reference to past legislation upon the subject, the district Judge says, "It will be seen that by the act of 1850, vesting the management of county affairs in the Courts of Session, power was given to purchase property *real* and *personal;* and that the same power was given by the act of 1851, from the operation of which the county of San Francisco was excluded, for the reason probably, that the bill for the creation of a Board of Supervisors for that county, was then pending before the legislature. The omission of the word '*real*' in the act under consideration, must be presumed to have been intentional on the part of the legislature, and with the design of *limiting* the powers of the Board to that of purchasing *personal* property for the ordinary uses and purposes of the county." What effect the omission of the word "real" would have had, if that word only had been omitted, it is not a part of our present purpose to inquire, for upon examination it will be discovered, what perhaps was before overlooked, that the additional words "*and personal,*" were likewise omitted. So that, instead of saying that the board should have power to purchase any real or personal property, the legislature

has omitted the unnecessary and tautological words, and conferred full power on the Board to purchase any property necessary for the use of the county.   While, if the other position be correct, the legislature has committed the gross error, of enacting that the Board of Supervisors shall have power to purchase or receive any property, except it be real or personal.   Of course no such supposition can for a moment be entertained.

The next objection advanced, and which is said to be fatal to the power claimed by the appellants, is, that the corporation of the County of San Francisco, and the corporation of the City of San Francisco cannot hold lands as joint tenants, or tenants in common.   It is not pretended that these said corporations can hold as joint tenants.   Joint tenancy is a technical feudal estate, founded, like the laws of *primogeniture*, on the principle of the aggregation of landed estates in the hands of a few, and opposed to their division among many persons.   For the creation of a joint tenancy, four unities are required, namely, unity of *interest*, unity of *title*, unity of *time*, unity of *possession*.   1 Cruise's Digest, (by Greenleaf,) 355, sec. 11.   2 Crabb's Real Prop. sec. 2303.   But the distinguishing incident is a right of survivorship. 1 Cruise, 359, sec. 27.   2 Crabb's Real Prop. sect. 2306.

Two corporations cannot hold as *joint tenants*, because two of the essential unities are wanting, namely, of the same capacity and title; 1 Cruise, 362, sec. 39.   Nor can they hold as joint tenants, for another reason; being each perpetual, there can be no survivorship between them; and this, as we have just seen, is the distinguishing incident of this estate.   Nor can a corporation hold lands as joint tenant with a natural person, for there is no reciprocity of survivorship between them.   Angel and Ames on Corporations, 150.   1 Kyd on Corp. 72.

But a tenancy in common requires for its existence but one unity, namely, that of *possession*.   1 Cruise, 390, sec. 2 ; 2 Crabb's Real Prop., 627, sec. 2316.   If, therefore, a grant should be made to two persons, which in its terms should imply a joint tenancy, but such an estate could not vest, for the reason that some of the requisite *unities* were wanting; the result would be the creation of a *tenancy* in *common*.   The rule of law is, that a grant shall not fail if there is a capacity to take under it, and if the higher estate cannot vest, the next estate which is pos-

sible, shall vest.   This is an equitable rule which is made to apply to all grants and devises.   The appellants in this case propose to purchase the undivided one-half of the property known as the Jenny Lind and Parker House, and the land upon which the same stands, to be used as tenants in common with the city of San Francisco.   But it is said that two incorporations cannot hold lands as tenants in common; and the case of the New York and Sharon Canal Company *v.* the Fulton Bank, 7 Wendell, 412, is cited in the opinion delivered by the District Judge, and is the only authority produced to sustain this proposition.   From an examination of the case, we think that it maintains the opposite doctrine.

The eminent counsel on the part of the plaintiff, *arguendo*, asserted that two or more corporations may unite in the purchase of property real or personal; they may take a deed of real estate for the establishment of their houses of business.   Insurance companies may own pilot boats in common, and canal companies may be tenants in common of locks, canal boats, and other property subserving their mutual interest; 1 Kyd, 108; 2 Kent's Com. 315:  and the counsel for the defendant said, "It is not denied that distinct corporations may own property in common:" while Savage, the Chief Justice, in delivering the opinion of the Court said, " These two companies had certain moneys in the hands of their officer, they were both interested in those moneys, and probably in equal degree.  Not being partners, they were tenants in common; in that character they made the deposit of the money, and in that character I can see no objection to their sustaining an action for it; thus the Court decides that they may be tenants in common in a chattel, but does not decide that they may be so in lands, that question not being before the Court; and yet this case is cited to maintain the doctrine that two corporations cannot hold real estate as tenants in common.

The books and cases do not afford any instance in which this right of holding lands as tenants in common either with each other or with natural persons is denied to corporations.  Not one of the reasons which work a want of capacity to hold as *joint tenants* would prevent their holding as *tenants in common*, for this estate requires but one unity, that of possession.

So far from corporations not being able to hold lands in common, the original condition at common law of the largest class of corporations known to the law, was that of holding all their lands in *common* with each other; and they were never separated until the original position produced inconveniences.   1 Kyd on Corporations, 108.

A constitutional objection is next raised to the law in question, it being alleged that it is in violation of the 25th section, art. 4, of the Constitution which is in the following language: "Every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title."   The act in question was a general act to "create Boards of Supervisors for the counties of this State, and to define their duties and powers," and included San Francisco and all other countries, save those expressly excepted in the first section.   It embraced but one object, viz., the creation of Boards of Supervisors and defining their duties and powers.   The construction to be placed upon this section of the Constitution has been well settled in New York in the Matter of Walker, 3 Barbour, Sup. Ct. Rep. 162, and in Georgia, Martin v. Roach, 6 Geo. R. 27, these being the only States in which similar provisions have been introduced in the constitution.   In the present case but one subject engaged the attention of the legislature at the time of its enactment, and that was fairly expressed in its title.   The authorities cited show, that this restriction of the constitutions of these States upon the legislative power was to guard against abuses of which many instances were formerly found; in general statutes producing inconveniences, error and mistake, and in private statutes effecting improper if not fraudulent results.   But it is only where the subjects embraced in the same statute are not expressed by its title, and have no congruity or proper connexion, that the evils sought to be prevented by this section can arise.   The statute under consideration is free from all difficulty of this kind.

The word "cumulative," as used by the legislature in the passage of the law in question, was intended to bear such a signification as to give to the Board of Supervisors of the County of San Francisco the same powers that were conferred upon the Boards created in other counties, and where additional powers were given to other counties the same, were to apply to the county of

San Francisco.   Another definition was attempted to be given to this word, but it was but a mere verbal criticism, to sustain which no authority was produced, and as the cause was abandoned on the argument, by the counsel for the respondents, none was advanced upon the hearing.

The conclusion at which this Court has arrived, after due examination of this case is, that the Board of Supervisors have competent authority and power to make the purchase referred to in the complaint; that the supervisors are constituted by law the sole judges of the necessity of the property in question for country purposes, and there is no allegation that it is not necessary.

The motion to dissolve the injunction should have been granted. The order denying the motion must, therefore, be reversed, and the injunction dissolved with costs to the appellants.

ANDERSON, Justice.   This cause was regularly upon the calendar of this term, and properly set for hearing, according to the rules of our practice.

Written notice of argument was served by the attorneys for the appellant, upon the attorneys for the respondents.   That notice is endorsed by the words: " Service this day of a notice in the above entitled cause, of which the within is a copy, is hereby admitted, dated the 12th day of July, 1852."   This was signed by *Chetwood*, *Edwards* and *Rose*, attorneys for the respondents.

There was no exception taken to this notice at the time by the counsel for the respondents.   When the cause was called, the counsel for the respondents served a notice upon the attorneys for the appellants, that they should require the securities for the costs of appeal to justify.

The attorneys for the appellants offered to deposite the amount of money required to secure the costs.   In view of this being done, the Court ordered the cause to proceed.

The attorney for the respondents abandoned the argument of this cause at the hearing.   The Court thinks proper to say, that it is a matter of the most perfect indifference as affecting its proceedings, that a cause should be so abandoned from whatever mistaken object in connexion with its rulings.

The decisions of this Court in the preliminary points made by the counsel, were conformable to previous adjudication. It is true they did not sustain the purposes of the delay intended; but they kept steadily in view not only the practice as settled, but the faithful administration of the law. This tribunal cannot condescend to permit itself to be used as a mere strategetical instrument to effectuate delays. When it shall have so degenerated, it will cease to be worthy of the respect of the profession or the confidence of the country.

In this case the respondents filed a complaint in the District Court of the Fourth Judicial District, on the 6th of July, 1852. They complained that the common council of the city of San Francisco, on the 2d day of July, 1852, passed an ordinance to effectuate the purchase of an equal undivided half of the property known as the Jenny Lind theatre, and Parker House property, for a City Hall. The sum fixed for the purchase was one hundred thousand dollars. The city comptroller was authorized to draw warrants upon the city treasurer for the purchase money. They were ordered to be drawn payable in four quarterly instalments, commencing three months from the date of the final execution of the deeds to be made for said property.

The complainant alleges that the City had no power to make such purchase.

The plaintiffs prayed that the City of San Francisco may be enjoined from completing the purchase. Also, that James W. Stillman, Comptroller of the City of San Francisco, may be enjoined from drawing any warrants upon the city treasurer therefor, and also that Stephen R. Harris, Mayor of the said city be enjoined from countersigning any warrants for that purpose; and also, that Smyth Clark, Treasurer of the said City be enjoined from paying or endorsing such warrants. The District Court ordered that the defendant shew cause on the 10th July, why an injunction should not issue according to the prayer of the complainant.

The Court below at the same time ordered that the City of San Francisco, and the other defendants named, absolutely refrain and desist from any other or further steps towards completing the said purchase, or any other, of real property, conformably to the several prayers of the complainant. A copy of

this order and injunction was served upon the defendants on the 6th of July.

The defendants in their answer claim for the City the power to make the purchase. They deny that a debt will thereby be created, which will exceed the sum of $50,000 over and above the annual revenue of the City. They deny also generally, that the ordinances passed by the City Council upon this subject are in violation of the City charter.

They allege, also, that at the time of passing the ordinance for the purchase of said property, they passed another ordinance appropriating $110,000 for said purchase, and the fitting up of said building, and designated and set apart the fund so appropriated as the "building fund."

They also state that the board of supervisors of the County of San Francisco did on the 3d of June, 1852, pass an order for the purchase of the other undivided half of the said property.

The defendants allege that the acts of the City council in relation to the said purchase are neither illegal nor inexpedient, and that they ought not to be enjoined from completing the same, and they ask that the injunction may be dismissed.

The rule to show cause was subsequently considered, and after the argument of counsel on both sides, the Court below denied the motion to dissolve the injunction, and made a final and absolute injunction conformably to the prayers of the complainant.

From this decision the defendants appealed.

This cause may be very briefly disposed of, and lies within a very narrow compass; and it is useless to pass in review the various minute expositions which might be made of the several incidental points which were raised in the Court below.

It presents simply a question of the extent of the corporate power of the City of San Francisco. By the act concerning corporations, passed April 22nd, 1850, in the 4th subdivision of the first section, every corporation has power to hold, purchase, and convey, such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited by law. The charter of the City grants the power "to purchase, receive, and hold property, real and personal." The facts in this case do not bring it within any exception to be raised out of the 5th section of the 3rd article of the charter. The record

shows that the annual revenue of the City will far exceed the appropriation of one hundred thousand dollars, as made by the ordinance—taken as it should be done, in connexion with the aggregate of former debts and liabilities, and applying the proviso of that section, which puts the debt of the city, owed at the time, out of the question, and as forming no part of the excess of fifty thousand dollars,—to which the City might extend its appropriations—beyond the aggregate of its revenue. But in addition to this, there is a positive law passed on the 10th of April, 1852, which gives full power to the corporation of the City of San Francisco to purchase or rent a suitable building for a City Hall for said city, provided the amount to be expended does not exceed $125,000. This law does not conflict with the charter of 1851, in any of its provisions or restrictions. It is full and complete, and is as much obligatory and authoritative for all purposes within its purview as if it had been made part of the charter at its passage. And the only question in the way is, whether the title proposed to be acquired is contrary to the nature and character of the rights and existence of the corporation.

It will be observed from the framing of the ordinance authorizing the purchase, that this particular state of the case was probably kept in view.

The ordinance provides that the corporation shall purchase the undivided moiety of the building, and hold it in common with the possessor of the other undivided moiety which was to be bought by the county of San Francisco. To do this was lawful. The respective parties would take separate deeds. They could not become by the purchase joint-tenants—and the *jus accrescendi* would not apply to the relations in which they would so be placed. This would be so if they held in joint-tenancy, but they would not. The unities necessary to constitute that mode of title are not present in the transaction. This is so plain and obvious that it is unnecessary to elaborate it.

Nor are the warrants proposed to be issued within the provisions of the seventh section of the third article of the Charter. The object of that section is of a totally different character, and there is no conflict with it. The act of the 10th of April, 1852, does not disturb it, nor is it affected by that section. On the contrary, it is plain, positive and absolute. There is no mis-

taking it, unless we particularly seek to make a perversion of terms, and to avoid one of the leading and necessary objects of the charter, and the decided and expressed intention of the legislature. This Court cannot enter into the question of the policy of the ordinance to purchase. We can only administer the law as it is. We do not undertake to make it, and last of all we will not fail in declaring it, because of popular and conflicting opinions in regard to it.

It is not for us to say whether the Common Council are wisely or unwisely dealing with the interests of the city. We leave that question where it ought to be, and simply administer the law as we find it. The Court below ought not to have granted the injunction originally, nor to have made it, upon the further hearing, absolute, which it did, in effect, denying the motion to dissolve, and declaring that the injunction be absolute, conformably to the prayer of the complainant.

The decision of the Court is, that the order of the Court below granting the injunction, be reversed, and the injunction dissolved, and that the respondents pay the costs.