Sheidley v. Lynch.

SHEIDLEY *et al.* v. LYNCH *et al.*, *Appellants.*

1.  **County Court:** POWER TO BUY LAND FOR COURT-HOUSE SITE: STATUTE. The power given by the act of the legislature of March 14, 1885, to a county court of a county in which terms of the' circuit court are held at a place other· than the county seat, to erect a courthouse at such other place, includes the power to buy land for a court-house site.

2.  **Express Statutory Power:** IMPLIED POWER. Where a power is given by a statute everything necessary to making it effectual is given by implication.

3.  **County Court:** COURT-HOUSE SITE: CERTIFICATE OF TITLE: STATUTE. The county court, having the certificate before it of the circuit court, as to the title of the land proposed to be purchased, as required by Revised Statutes, section 5328, may, after having disapproved the selection of the land, subsequently, upon the same certificate of title, reconsider and approve such selection, there having been no change of title since the certificate was given.

4.  ——: ANTICIPATING REVENUE. The county court, in the purchase of a site for a courthouse, may anticipate the revenue collected and to be collected, and bind the county to that extent, but not in excess of the annual revenue.

*Appeal from Jackson Circuit Court.*—HON.  J.  H. SLOVER, Judge.

REVERSED.

*Karnes & Krauthoff, E. P. Gates* and *C. O. Tichenor* for appellants.

(1)  The county court may lawfully and rightfully do whatever is necessary to carry out and execute the trusts reposed in it. *Railroad v. Marion Co.*, 36 Mo. 303; *Walker v. Linn Co.*, 72 Mo. 653; *Linnville v. Bohanan*, 60 Mo. 554; *Boggs v. Co.*, 28 Mo. 586; *Gammon v. Co.*, 79 Mo. 223. (2) The county court has the authority to acquire land for the use of the

county. R. S., sec. 1199. (3) The act of March 14, 1885, gave the county court authority to erect a court-house in Kansas City, and this necessarily carried with it the further authority to obtain land whereon to build it. *De Witt v. City*, 2 Cal. 289. (4) The certificate of the circuit court as to the title was sufficient, and no time was specified within which the county court should act after receiving such certificate. The county court had jurisdiction over the matter, and it was for it to determine whether the purchase should be made. *County v. Shores*, 97 U. S. 279 ; *Brewer v. Boston*, 113 Mass. ; *Moore v. Mayor*, 73 N. Y. 246. (5) The county court had made no order for the division of the funds of the county, thinking it impracticable to do so. The whole of the purchase money could have been paid at the time the order was made, but the court deemed it best to keep a part of the money on hand, and only to pay a part, waiting a short time until certain money came into the treasury to pay the balance. Such action is not condemned by *Book v. Earl*, 87 Mo. 246.

*James Gibson* for appellant Lynch.

(1) The functions of the county court in the matter at bar being administrative and not judicial, a writ of injunction or prohibition will not lie. *Vett v. Owens*, 42 Mo. 512 ; *State ex rel v. Clark Co.*, 41 Mo. 44; 45 Mo. 52 ; 10 West. Rep. 361. (2) There is no evidence of any fraud, and equitable interference cannot, therefore, be invoked on that ground. *State ex rel. v. Howell Co.*, 58 Mo. 584 ; *Moses v. Risdon*, 46 Ia. 251 ; *Andrews v. Knox Co.*, 70 Ill. 69. (3) The county court could approve of the location after its rejection in the first instance. Being an administrative act there was no *res judicata*. *County v. Phillips*, 45 Mo. 75 ; *Reppy v. Jefferson Co.*, 47 Mo. 68 ; *Phelps Co. v. Bishop*, 46 Mo. 68 ; *State v. Cooper Co.*, 17 Mo. 510. (4) The

power to control and manage the real and personal property of the county involves the possession of a large discretion, and the circuit court cannot control the exercise of this discretion which is vested by law in the county court. *Hooper v. Ely*, 46 Mo. 507 ; *State ex rel. v. Smith*, 46 Mo. 63. (5) Revised Statutes, 1879, section 1199, is sufficient authority to purchase property for the use of the county. This is simply a continuance of the law of 1877. Laws, 1877, p. 227, sec. 8 ; *City v. Riley*, 52 Mo. 424, 429 ; *City v. Foster*, 52 Mo. 513 ; *St. Louis v. Alexander*, 23 Mo. 509. (6) Besides the act of 1885 confers on the county court full power to purchase the land. The county court is vested with such powers " as may be fairly or necessarily implied from those expressly granted." *Walker v. Linn Co.*, 72 Mo. 653. Whenever a power is given by a statute, everything necessary to making it effectual is given by implication. Potter's Dwarris on Statutes, 123. (7) The certificate of the circuit court as to the validity of the title was sufficient. Nothing is better settled, as a general rule, than that, where a statute requires an act to be done by an officer within a certain time, for a public purpose, the statute shall be taken to be merely directory ; and though he neglect his duty by allowing the precise time to go by, if he afterwards perform, his action will be upheld. *Ex parte Heath*, 3 Hill, 47 ; *People v. Allen*, 6 Wend. 486 ; *Colt v. Eves*, 12 Conn. 23, 255. No second certificate of title was necessary. *Pond v. Negus*, 3 Mass. 232 ; *Wheeler v. Chicago*, 24 Ill. 107. (8) Revised Statutes, section 6818, requiring the county court to apportion and subdivide the county funds is not in the first instance mandatory. *Book v. Earl*, 87 Mo. 253.

*T. T. Crittenden, R. H. Field, Dobson, Douglass & Trimble* and *Gage, Ladd & Small* for respondents.

(1) No question is raised on the pleadings or the

evidence as to the violation of Revised Statutes, section 6818. (2) While courts are held in Kansas City, Independence is the county seat of Jackson county, hence the Revised Statutes *per se* confer no power to build a courthouse, or buy ground for that purpose, at Kansas City. R. S., secs. 5321, 5327. (3) Nor does the act of 1885 in terms or by requisite implication confer such power. To warrant the inference of an implied power having been conferred by statute, such implied power must be absolutely and indispensably necessary to carry into effect the powers expressly granted. 1 Dillon Mun. Corp. [3 Ed.] sec. 89. The fact that the county owned other land at Kansas City when the act of 1885 was passed is a circumstance proper for consideration in determining whether or not this legislative act conferred the alleged implied power. *United States v. Railroad*, 91 U. S. 72 ; *Rupp v. Swineford*, 40 Wis. 28. If it were simply a matter of doubt about this lack of power to purchase the proposed site, that alone would be a negative of the power. *Lackland v. Railroad*, 31 Mo. 185 ; Dillon on Mun. Corp., sec. 89. Revised Statutes, section 1199, never applied to buying ground for courthouses because that matter was specially covered by chapter 95 of Revised Statutes. *State v. Green*, 87 Mo. 583 ; *Dewey v. Co.*, 42 Mich. 399 ; *Griffith v. Carter*, 8 Kas. 565. Said section 1199, Revised Statutes, was repealed by the act of 1883 and was not revived by the act of 1885 repealing the act of 1883. R. S., sec. 3148. (4) If article 2, of chapter 95, of the Revised Statutes, applies to Kansas City, then the approval of the proposed purchase of land and the pretended payment therefor was void also, because it was not for cash. Section 5329 contemplates a simultaneous order of the payment of the purchase money out of money then in the treasury when the order approving the location selected by the superintendent is made by the court.

*English v. Wilshire*, 26 Ark. 454; *Simpson v. Lauderdale Co.*, 56 Ala. 64; *County v. Carter*, 2 Kas. 116; *County v. McFarlan*, 82 Ill. 138. (5) The transaction enjoined was the purchase of a court-house site in direct violation of Revised Statutes, sections 5327, 5328, 5329, and all laws governing and regulating such purchases. (6) The provision of the statute requiring the county court to ascertain that the title to the land was good, is an imperative and a necessary prerequisite to its power to purchase; and the statutory mode of ascertaining that important and jurisdictional fact is exclusive and mandatory. Cooley on Tax. 215; *French v. Edwards*, 13 Wall. 506; *People v. Supervisors*, 51 N. Y. 401; *Dryfuss v. Bridges*, 45 Miss. 247; *Monmouth v. Leeds*, 76 Me. 28; *Fowler v. Perkins*, 77 Ill. 271; *Griffith v. Follett*, 20 Barb. 633; *Hudson v. Mayor*, 9 N. Y. 169; *People v. Connelly*, 4 Abt. Prac. (N. S.) 377; *Pavement Co. v. Painter*, 35 Cal. 699. (7) The county court is the agent of the county only to the extent and in the manner prescribed by law. So long as it continues in the narrow pathway allotted to it by legal enactments, its acts are valid; but whenever it steps beyond, its acts are void. *County v. Wilson*, 61 Mo. 237; *County v. Cowan*, 54 Mo. 234; *Stein v. County*, 48 Mo. 167; *Ruggles v. Collier*, 43 Mo. 353; *Walcott v. County*, 26 Mo. 272. (8) The county court and other county officials may be restrained by injunction from doing acts in their nature official, which are unauthorized and void. And this remedy has been frequently applied. *Hayes v. Downs*, 75 Mo. 250; *State ex rel. v. Brassfield*, 67 Mo. 331; *Turner v. Stewart*, 78 Mo. 480; *Railroad v. Anthony*, 73 Mo. 431; *Towne v. Bowers*, 81 Mo. 491; *Bank v. Kercheval*, 65 Mo. 688; *State ex rel. v. Railroad*, 87 Mo. 236; *Book v. Earl*, 87 Mo. 246; *Board v. McComb*, 92 U. S. 530. And this may be done at the suit of taxpayers. *Book v. Earl, supra; Newmeyer v. Railroad*, 52 Mo. 81; *Matthis v. Cameron*, 62 Mo. 504; *Wagner v. Meaty,*

69 Mo. 105. (9) The approval of the title by the circuit court was made on the third of January, and in another transaction. This proposed purchase was begun on the twenty-eighth of January. No certificate is claimed interim. If a certificate under an examination made twenty-five days before the purchase is a compliance with the condition, there is no reason why one made twenty-five years before should not be equally effectual. If outside proof that for the last month the title has not been changed can be substituted for a certificate, then outside proof may be substituted as to the whole title. The law cannot be thus frittered away.

NORTON, C. J.—Stripping the record in this case of its verbiage and redundancy, it discloses the following facts, viz : That the county court of Jackson county, at its May term, 1886, by an order duly made, submitted to the qualified voters of said county, at an election thereafter to be held, a proposition to issue the bonds of the county to the amount of five hundred thousand dollars for the purpose of building a courthouse in the City of Kansas ; that said election was held and a majority of the voters were in favor of said proposition, and afterwards said county court, by its order duly entered of record, declared that a majority of the voters at said election voted in favor of said proposition, and ordered and directed that said courthouse be erected, and said bonds issued ; and further ordered that George R. Nelson be appointed to superintend the erection of said building; that the said court also made an order as follows : " Whereas there are no suitable grounds upon which to build the new courthouse within the limits of the City of Kansas, belonging to the county of Jackson, it is, therefore, ordered by the court that George R. Nelson, the superintendent heretofore appointed by this court, proceed to select a suitable piece of ground upon which to build said courthouse,

anywhere within the corporate limits of the said City of Kansas, and that he purchase or receive by donation, a lot or lots of ground for that purpose subject to approval or rejection by this court, and that said superintendent make report of his proceedings under this order, and also to each division of the circuit court of Jackson county at Kansas City."

Said Nelson having duly qualified, after reporting all the sites offered or suggested to him to the county court and taking its opinion, selected a block of ground at Fifth and Oak streets in said city, bounded on the north by Fifth street, on the east by Locust, on the south by Missouri avenue and on the west by Oak street; that he entered into negotiations for the purchase of said block of ground with William W. Kendall, Samuel C. Gates, John Chrisman, and Henry Smith, who were the owners thereof, which culminated in a purchase of the property at the price of two hundred thousand dollars; that said owners executed deeds conveying the property to the county which were deposited in the National Bank of Kansas City; that Nelson duly reported the purchase with the deeds and abstracts of title to one division of the circuit court at Kansas City, and said circuit court (Gill being judge thereof), thereafter duly certified to the county court, that the title conveyed by the owners of the property, by said deeds to the county, was a good, valid, and perfect title; that the matter presented to Judge Gill was passed on by him the third day of January, 1887; that the county court had fifteen days after the title was passed on to decide whether they would take the property under the contract with the owners.

It further appears that, on the twelfth of January, 1887, the selection by Nelson of the said property as a site for the courthouse was taken up, disapproved, and rejected, there being but two judges present, Judge

McDonald, who was presiding justice, voting for disapproval and rejection, and Judge Chiles voting for approval, and objecting to the matter being taken up in the absence of Judge Lynch, and the court adjourned to the twenty-eighth of January. It further appears that, after said order was made, the owners of the property demanded and received back their deeds. It further appears that, thereafter, at a special term of said county court regularly called and held on the twentieth of January, 1887, said court, all the judges being present, by an order of that date, rescinded the said order of the twelfth of January, 1887, disapproving said Nelson's selection of said court-house site ; that other negotiations were entered into with the owners of said property resulting in an agreement whereby said owners were to be paid two hundred and ten thousand dollars for the property, of which said sum the county was to pay two hundred thousand dollars and ten thousand dollars to be paid by property-owners interested in securing said site for court-house purposes ; thereafter, on the twenty-eighth of January, 1887, said Nelson reported to said county court that he had selected said site for the courthouse, and said court thereupon approved such selection, received the deeds from the owners conveying the property to the county, and ordered warrants to the amount of one hundred thousand dollars to be issued to the vendors of said property in part payment of the purchase price, the agreement being that the county would pay one-half the purchase money in cash and the other half at such times as it suited the court to do so with six per cent. interest.

It is a conceded fact that no other examination of the title to this property was made by Judge Gill than that made by him on the third of January, 1887, and it is also a conceded fact, that from the time such examination and certificate were made till the twenty-eighth

of January, 1887, when the county court approved Nelson's report, confirmed the purchase, and accepted the deeds, that nothing either appeared or was of record affecting the title to said land. It further appeared that the county had owned, from about the year 1870 or 1872, lots twenty-six, twenty-seven, and thirty, in block three in the City of Kansas, situated on the northeast corner of Main and Second streets, with a frontage of one hundred and forty-two feet on Second street and one hundred and eighty feet on Main street; that the three-story building on said lots was used for county offices and courtroom till May, 1886, when it was blown down by a cyclone; that it has since been repaired and had upon it a substantial two-story building in which are held all the courts of the county, except the circuit courts, and in which all the county offices are located at Kansas City except the offices of the clerk of the circuit court and sheriff of the county.

On the same day the county court approved Nelson's report and accepted deeds to the property, plaintiffs, as citizens and taxpayers of Jackson county, commenced this suit against the judges of the county court, Burr, the county clerk, Murray, county treasurer, Nelson, superintendent, and Smith, Chrisman, Kendall, and Gates, the vendors of the property, for the purpose of enjoining them from completing the purchase of the block of ground selected by Nelson as a site for the courthouse. On a trial of the cause, the court made a decree granting the prayer of the petition, from which defendants have appealed.

The first ground for the relief asked is in substance that the county judges, in the appointment of Nelson, were influenced by corrupt motives and that Nelson and the county judges were influenced, in the selection of the ground in question, by the same motives; second, that the price agreed to be paid was exorbitant and extortionate; third, that the block of ground selected as a

site is inconveniently located, and that the public would be greatly inconvenienced and discommoded, if the courthouse is built thereon. As to the grounds above stated for relief the trial judge found as follows: That the said county judges, county officers, superintendent, and owners of the property, did at all times act in the utmost good faith, and what said public officers did concerning said purchase they believed to be for the public good ; that the site selected is good as to air, light, freedom from noise, and reasonably convenient of access, and that the price agreed to be paid was reasonable. The evidence fully justified these findings.

The grounds relied upon for relief, other than those above stated, are, that the county owned suitable grounds in the City of Kansas upon which the courthouse could be built, that the county court in making the purchase had proceeded in disregard and in violation of Revised Statutes, sections 5327, 5328, and 5329. These objections call for a decision of the vital question : Did the county court have the power under existing laws to buy the land in the City of Kansas, on which to erect a courthouse? The power is claimed to be conferred by an act of the General Assembly, approved March 14, 1885, which is as follows : "That an act entitled 'an act providing for the erection of courthouses and jails in places other than county seats in certain cases,' approved March 16, 1883, be and the same is hereby repealed, and in lieu thereof the following is enacted : Section 1. In any county in this state, in which terms of the circuit court, or courts of common pleas having circuit court jurisdiction, are by law held at a place other than the county seat, the county court of such county may cause the erection of a good and sufficient courthouse and jail at such place other than the county seat where such courts are held, and for such purpose shall have and possess all the powers conferred on it for the erection of courthouses and jails at the county seat."

Independence is the county seat of Jackson county, and as terms of the circuit court of said county are, by law, held at the City of Kansas, there can be no question but that the act above quoted confers the power on the county court of said county to build a courthouse and jail in said city, and this power thus expressly given carries with it every incidental power necessary to the execution of the power expressly conferred. The correctness of this proposition is established by the following authorities: In Potter's Dwarris, p. 123, rule 8, it is said: "In statutes incidents are always supplied by intendments; in other words, whenever a power is given by a statute everything necessary to the making of it effectual is given by implication." So in the case of *Supervisors v. Gorrel*, 20 Grat. 484, at p. 505, whereby a statute power was given to the supervisors of Culpepper county "to build and keep in repair county buildings," but no express power was given them to acquire land for any purpose, in the disposition as to the right of the supervisors to acquire land for the purpose of erecting county buildings thereon, it is said: "The implied power to acquire the ground is as plainly given as the express power to erect the buildings. In the construction of the most naked powers to which the strictest rules of construction are applied, there is no better settled rule than this, that every power necessary to the execution of an express power is plainly implied."

So in *De Witt v. City*, 2 Cal. 289, in the disposition of a like question, it is said: "It cannot seriously be doubted that if the power to purchase any property had not been given in express words, that the authority to erect a courthouse or jail would necessarily embrace the power to purchase the land on which to erect it; the land whereon to build it being no less essential than the stone and material to build it with."

So in the case of *H. & St. J. R. R. Co. v. Marion*

*County*, 36 Mo. 303, it is said that the county court is the agent of the county, and may lawfully and of right do whatever is necessary to carry out and execute the trusts reposed in it. So in the case of *Walker v. Linn County*, 72 Mo. 650-3, it is said : "That a county court is invested with such powers only as are expressly conferred upon it by statute, or such as may be fairly and necessarily implied from those expressly granted, we think cannot be questioned." These citations are sufficient to establish the proposition stated.

It is claimed in the brief of counsel, as it was in the oral argument, that the above principle can only be invoked in a case where the county owns no land suitable for the erection of a courthouse. Conceding this to be so, by whom is the question to be determined as to whether the land owned by the county in the City of Kansas was suitable for the purpose of erecting such a courthouse as five hundred thousand dollars, which has been voted for that purpose, would build? The solution of this question was necessarily devolved upon the judges of the county court, upon whom the law conferred the power to build the house, and when determined by the said court, we cannot interfere and substitute our judgment, unless it appears that such determination or decision was brought about by fraud or corruption, or is so manifestly wrong and prejudicial to the public as to create a conviction that it was the result of fraud and disregard of public duty. We find nothing in the evidence to justify a conviction that the decision of the county court as to the fact that Jackson county owned no land in the City of Kansas suitable for the erection of such a courthouse thereon as was contemplated and authorized to be built, was the result of fraud or corruption, or so manifestly wrong and against the fact, or so prejudicial to the public, as to create a conviction that it was the result of either fraud or corruption, and agree upon this point with the trial judge

that the court and its officers, in all that was done, acted in the utmost good /faith. Dr. Munford, one of the plaintiffs, was a witness, and testified on his cross-examination that he regarded the old courthouse as an unfit place for the location of the courts, and there is abundant evidence in the record to the same effect.

It is also insisted that if the county court possessed the power to purchase the block of ground in question, that it exceeded its authority in making the purchase, without having before it such a certificate of the circuit court as to the title of the property as the statute required, and that the county court should, therefore, be enjoined from completing the purchase. It is an undisputed fact that the question of title had been submitted to a division of the circuit court of Jackson county at Kansas City, presided over by Judge Gill, and that, on the third of January, he passed upon the question, and decided the title to be a good, valid, and complete title, and so certified. This certificate was before the county court on the twenty-eighth of January, 1887, when it took final action and concluded the purchase, and it is an admitted fact in this record that nothing appeared or was of record between the third of January, 1887, and the twenty-eighth of January, 1887, affecting the title to the land. When the circuit court is called upon to investigate title in cases like the present, it is provided by section 5328, Revised Statutes, that "such court shall examine its title, and certify its decision thereon to the county court." And by section 5329, it is provided that : "If the title to the land so purchased, or received, be approved, the county court, if they approve the selection, shall make an order for the payment of the purchase money, if any, out of the county treasury." The county having had before it the certificate that the title had been examined by the circuit court and decided to be a complete and perfect title, cannot be said to have transcended their authority in

acting upon it, especially so in view of the admitted fact that there had been no change in the title since the examination was made by said circuit court.

It is also insisted that there was not money enough in the county treasury to pay the purchase price for the land. Mr. Murray, the county treasurer, testified that he had been treasurer of Jackson county since the first of January, 1887; that on the twenty-eighth of January, 1887, there was money in the treasury of said county not set apart for other purposes, in the neighborhood of two hundred thousand dollars; that the amount was between one hundred and sixty and two hundred thousand dollars; that, when the warrants for the courthouse were ordered to be drawn, he was sent for by the court, and enquiry was made of him, whether he had sufficient money to pay the appropriation, and that he informed the court he had plenty of it. Judge Lynch testified to the effect that the county finances would have permitted the payment of the whole of two hundred thousand dollars, but it was thought best to pay only part at once, and wait until additional revenue came in before paying the balance. In view of this evidence, and the fact that the county court might anticipate the revenue collected and to be collected, and bind the county to the extent, but not in excess, of the revenue provided for that year, the reason urged for restraining the county court from paying the purchase price to the owners of the property, whose title had been conveyed to the county by deeds accepted and filed for record, is without merit and ought not to prevail.

For the reasons herein given, the judgment of the circuit court is reversed and plaintiffs' bill dismissed, in which all the judges concur.