## BUDD et al. v. BUDD et al.

(Circuit Court, W. D. Missouri, W. D. February 6, 1894.)

### No. 1,872.

1. MUNICIPAL CORPORATIONS—POWERS OF COUNCIL—APPROPRIATIONS—ACCEPTANCE OF DEVISE FOR PARK.

A charter provision forbidding the council to appropriate any money in excess of the revenue for the fiscal year actually collected, or to bind the city by any contract or act to any liability until a definite sum shall

first be appropriated for the liquidation of all liability flowing therefrom, does not apply so as to prevent the council from accepting a devise of lands for a public park, subject to an annuity to the widow of the devisor during her life, which is paid by annual appropriation from the general fund; the council being vested by other provisions of the charter with ample powers to acquire land for this purpose, either by devise, or by actual purchase, to be paid for out of the general funds in annual installments.

**2. CONSTRUCTION OF STATUTES.**

Statutes in pari materia must be construed so that they may all stand. Each part should be construed in connection with every other part so as to give effect, if possible, to each, and harmony to the whole.

**3. WILLS—CONSTRUCTION—ACCEPTANCE OF DEVISE.**

A devise of real estate to a city, on condition that the city pay to the devisor's widow annually $3,000, creates a legacy—an annuity—in her favor. Its acceptance by the city vests in it the fee, charged in equity with the payment of the annuity.

In Equity. Suit to set aside a devise of lands to Kansas City for a public park. Bill dismissed.

Statement by PHILIPS, District Judge:

In December, 1890, Azariah Budd died, testate, at the county of Jackson, state of Missouri, leaving the defendant S. A. Cornell Budd his surviving widow. On the 15th day of December, 1890, his will was duly admitted to probate in said county. The second paragraph of the will is as follows: "(2) I give and devise to Kansas City, Mo., for a public park, to be named 'Budd Park,' twenty-one acres of land, being in the northwest corner of the northwest quarter of the southeast quarter of section 35, township 50, range 33, subject to an annual payment of three thousand dollars to said S. A. Cornell Budd during her natural life. If said Kansas City shall not accept said land for such park under said conditions, then it is my will that said land and all other lands owned by me in said Jackson county be sold, and the interest of the proceeds be paid to the said S. A. Cornell Budd during her natural life, and, at her death, the principal to be given to such benevolent purposes as may be productive of the most good."

Kansas City, by ordinance, accepted the devise of said land, of date March 5, 1891, "upon the terms and conditions named and provided for in said last will and testament," and declared the land to be a public park, to be known as "Budd Park," and directing the annual payment to be made to said S. A. Cornell Budd upon the 15th day of December of each year, to begin on the 15th day of December, 1891; and the said S. A. Cornell Budd duly filed her acceptance of the provisions of said ordinance. The city, by ordinance, for each fiscal year, apportioning funds to the city, has since made two payments of said annuity out of the general fund of the city, and has, since the institution of this suit, made provision therefor. The said Azariah Budd left no children or father or mother surviving. The plaintiffs, who are brothers and sisters of the whole blood and half blood of said Azariah, bring this action to have said devise of said real estate declared ineffectual, for the reasons that the said city has no power to take and hold said land under said will, and because the will is otherwise inoperative, by reason of the provision that, in case the said city shall not accept, the land be sold in case of the death of said S. A. Cornell Budd, the money arising from such sale to be given to such benevolent purposes as may be productive of the most good, the said provision being void for uncertainty. The cause is submitted to the court on the pleadings and proofs.

Johnson & Lucas, J. L. Grider, and A. M. Allen, for complainants.

C. O. Tichenor and Fyke & Hamilton, for respondents.

PHILIPS, District Judge, (after stating the facts.) The controlling question in this case is, did Kansas City possess legal capacity

to take and hold this land under the provisions of said will? The charter of a municipality is the source of its powers. It can exercise no power which is not expressly conferred upon it, or such as arises by fair implication as essential or reasonably proper to give effect to powers expressly granted. Doubts as to the existence of such power are to be resolved against the corporation. This rule of construction is succinctly stated by the supreme court in Minturn v. Larue, 23 How. 436:

"It is a well-settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public. This principle has been so often applied in the construction of corporate powers that we need not stop to refer to authorities."

Under the city charter in force at the time of the taking effect of the devise, it is expressly declared in section 1, art. 1, that said Kansas City is empowered to—

"Acquire and hold by gift, devise, purchase or by condemnation proceedings, lands or other property for public use, either within the corporate boundaries of said city or beyond the limits of the city * * * for public parks, * * * and may also take, hold, use and improve any property, real, personal or mixed, either within or without the city limits, that may be acquired by gift, devise, bequest or otherwise, for any charitable use or educational or benevolent purposes whatsoever."

Article 10 provides especially for the establishment of public parks. By section 1 it is made the duty of the common council to "arrange for a system of parks," and it directs the division of the city into park districts. Section 3, art. 10, declares that:

"It shall be the duty of the board of park commissioners to select or to select and purchase real estate for parks in the district for which a park shall have been ordered by the common council; provided, however, that before such election shall be valid it shall be approved by the board of public works."

Section 4, art. 10, provides for the mode of payment of lands purchased for parks inside the city limits, which may be done by assessments on property within the district, and may be raised by installments.

Section 11, art. 10, declares that:

"The common council is authorized to provide by ordinance for the purchase, or otherwise obtaining, of real estate for such public park or public parks as it may deem necessary outside of the city limits. Payment therefor shall be made out of the general fund or by a direct tax levy upon the taxable property within the city limits; such levy to be made by the common council, subject to the constitution and laws of the state; in such manner and at such rate as may be prescribed by ordinance."

Then follows section 12:

"The city is authorized to receive gifts, devises and bequests of any real or personal property for any public park, or for the public park of any district which may be by it created."

From àll of which it is manifest that the city is fully empowered to take and hold lands for the use of public parks.

The principal objection urged against the city's title is predicated of section 30, art. 4, of the charter, which declares, inter alia, that:

"The common council shall not appropriate money for any purpose whatever in excess of the revenue of the fiscal year actually collected and in the treasury at the time of such appropriation and unappropriated. Neither the common council, nor any officer of the city, except the comptroller, in a single instance in this charter provided, shall have authority to make any contract, or to do any act binding Kansas City, or imposing upon said city any liability to pay money until a definite amount of money shall first have been appropriated for the liquidation of all pecuniary liability of said city under said contract, or in consequence of said act; and the amount of said appropriation shall be the 'maximum limit of the liability of the city under such contract, or in consequence of any such act, and said contract or act shall be ab initio null and void as to the city for any other or further liability."

The argument is not only that no such appropriation was in fact provided for by ordinance, but from the very nature of the transaction no such ordinance could have been enacted, for the reason that, owing to the uncertainty of the duration of the life of Mrs. Budd, the amount of the appropriation in the aggregate was not ascertainable.

There are several valid answers to this objection. Said section has especial reference to contracts made by the common council, or acts done by it to bind the city, or imposing upon it a pecuniary liability springing therefrom; and, in the very reason and nature of things, it can only apply to such transactions by the common council as are susceptible of liquidation by an immediate appropriation. It must be construed in connection with the whole provisions of the charter, so as, if possible, to give harmony, force, and efficacy to every part thereof. Statutes in pari materia are to be construed so that they may all stand. Among the recognized canons for the interpretation of statutes are that the intention of the legislature may be gathered from a view of every part taken and compared together, and, when the true intention is ascertained, it will prevail over the literal sense of the terms; and the reason and intention of the lawgiver will control the strict letter when the latter would lead to palpable injustice, contradiction, or absurdity. And, where there is doubt whether a certain thing falls within the terms used in an act, it is proper to resort to other statutes to ascertain the mind of the legislature in enacting the general statute. A thing within the intention of the legislature in framing a statute is sometimes as much within the statute as if it were within the letter. In re Bomino's Estate, 83 Mo. 441.

In U. S. v. Kirby, 7 Wall. 483, Mr. Justice Field said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will therefore be presumed that the legislature intended exceptions to its language, which would avoid results of this character."

So in Pollard v. Bailey, 20 Wall. 525, the chief justice said:

"The intention of the legislature, when properly ascertained, must govern in the construction of every statute. For such purpose, the whole statute must be examined. Single sentences and single provisions are not to be selected and construed by themselves, but the whole must be taken together."

Said section 30 was in the charter of the city before the amendment incorporating article 10 providing for public parks. This added article devolved upon the common council the duty of arranging for a system of parks; and in and of itself furnished a method and means of compassing the system; and, in so far as it embodies within itself the method and means of acquisition by the city of such lands, it is not dependent upon section 30, art. 4, for its life. Section 4, art. 10, provides, for instance, for the payment for lands purchased for parks inside of the city, by making payments in three annual installments, to be raised by assessments through three years. This cannot have reference to a "definite amount of money which shall have been first appropriated for the liquidation of the pecuniary liability" of said city. Literally, there is in such case no appropriation of money, for the money is yet to be raised by taxation on property in the district.

The land in question lying without the city limits, if it should be purchased, inures to the benefit of the whole city, and "payment therefor shall be made out of the general fund, or by a tax levy upon the taxable property within the city limits." The city has paid the annuity thus far out of the general fund, and presumably under ordinances made therefor, conformable to section 2 of article 3 of the charter. Suppose the city had purchased outright from Budd, in his lifetime, this land, at, say, $50,000, to be paid out of the general fund in annual installments of $3,000. Does said section 30 apply literally, so that the council should be required in advance to adopt an ordinance definitely appropriating $50,000 for the payment of all the installments? Would not the evident spirit of article 10 be met by an approval of the purchase by the board of public works, and the adoption of an ordinance each fiscal year in assigning the appropriations, just as has been done in this case, setting apart $3,000 to meet the annual installment? Said section 2 of article 3 provides that:

"Within the first month of each fiscal year, the mayor and common council shall by ordinance, as far as practicable, make all necessary apportionments of the revenue to be raised for such year, to the expenses of the several departments, and for all public works, under proper headings, and for such other objects as it may be necessary to provide for."

The qualification, "as far as practicable," clearly enough indicates that, in the practical application of this statute, it possesses flexibility sufficient to permit of adaptation to the requirements of a case like this. It has never, in actual practice, been deemed to interfere with the annual apportionment of funds to pay for the annual supply of water to the city under a 20-year contract, or with a like usage in respect of supplying the city with gas. It does not

stand to reason that, under contracts for payments accruing annually, the appropriating ordinance should provide for future years.

So it is said in Crowder v. Town of Sullivan, 128 Ind. 487, 28 N. E. 94:

"When municipal corporations contract for a usual or necessary thing, such as water or light, and agree to pay for it annually, as furnished, the contract does not create an indebtedness for the aggregate sum of all the yearly installments, since the debt for the year does not come into existence until the compensation for each year has been earned."

In short, it does not become a contract debt until the year of the maturing of the installment. Carlyle Water, Light & Power Co. v. City of Carlyle, 31 Ill. App. 325.

So it has been held that:

"If the corporation has the right to purchase real estate, and there is no restriction as to whether it shall be for cash, * * * if the power to purchase be established, the power to give the evidence necessarily ensues." First Municipality v. McDonough, 2 Rob. (La.) 250.

If the city were required to make an appropriation by ordinance in advance for the entire purchase money, it would imply that the city was limited to cash contracts, and the transaction would at once be open to attacks in nine instances out of ten, on the ground that the sum required was in excess of the constitutional limitations as to the amount of revenue the city was permitted to raise for that year, and thus practically prevent the city from establishing parks.

There is no claim made in this case that this annuity exceeds the annual revenues of the city for general purposes. As said in Appeal of the City of Erie, 91 Pa. St. 403:

"If the contracts or engagements of municipal corporations do not overreach their current revenues, no objection can lawfully be made to them, however great the indebtedness of such municipality may be, for in such case their engagements do not extend beyond their present means of payment, and so no debt is created."

Technically speaking, this $3,000 is of the nature of a legacy, and the terms "legacy" and "annuity" are often used interchangeably. Castor v. Jones, 86 Ind. 294; Mullins v. Smith, 1 Drew. & S. 211; Ward v. Grey, 26 Beav. 491. The devise in this case, in legal effect, is the same as the devise of land by A. to B., burdened with the condition that B. support A.'s widow during her natural life; and such devisee is a purchaser for value, and the fee vests on his acceptance. Farwell v. Jacobs, 4 Mass. 636; Sheldon v. Purple, 15 Pick. 528; Richards v. Merrill, 13 Pick. 408; Fahrney v. Holsinger, 65 Pa. St. 388; Jones v. Jones, 13 N. J. Eq. 240. This rule obtains even where the instrument of concession might specify a life estate in the grantee. Harrington v. Dill, 1 Houst. 410; McRee v. Means, 34 Ala. 377; Lindsay's Heirs v. McCormack, 2 A. K. Marsh. 229. It is in recognition of these principles that the courts have held that under a will devising real estate to the testator's son, with the stipulation that the son pay to a third party a given sum upon acceptance, the real estate in equity becomes chargeable

with the payment of the legacy, in the absence of something in the will to rebut this legal presumption, or to create an inference that the testator intended to exempt the estate devised from such charge.    Brooks v. Eskins, 24 Mo. App. 296.

Why should the plaintiffs bother themselves about the question whether this be technically a purchase, gift, or devise?    It is conspicuously manifest from the tenth article of the city charter, as it has been recently re-emphasized by the amended charter granted by the state legislature, February 27, 1892, that the legislature and the incorporators were impressively alive to the public necessity of parks.    With the advancement of civilized life, these restful spots, where all the people may at times catch a breath of pure air, and feel the healthful glow in the contagion of nature's verdure and shade, are becoming inseparable from the idea of social well-being in our larger cities; and plenary power, therefore, was sought to be conferred on this city to accomplish this beneficent end.    All the customary ways of acquisition of property for this purpose were opened up to it, by purchase, gift, devise, and even by the exercise of the high prerogative of eminent domain.    How, then, is the power "to take and hold" to be affected by the concession of this land, commingling the elements of a devise, gift, and purchase?    Judge Scott, in Chambers v. City of St. Louis, 29 Mo. 574, speaking responsive to this thought, said:

"It has been held where a corporation is prohibited from taking by devise, and is empowered to take by purchase. the word 'purchase' shall be construed in its vulgar, and not its legal, sense, which signifies an acquisition by any other mode than by inheritance."

The mere fact that uncertainty as to the duration of this annuity exists does not affect the existence of the power to so take; nor does it in any wise concern these plaintiffs.    The power to take and hold, how much should be paid for the land, and the time of payments, in the common sense of the case, are reposed in the sound discretion of the park commissioners, the board of public works, and the municipal legislature.    It does seem to me that it would be apex juris to subject this charter to the construction that, if the city had the opportunity to acquire the fee simple to a tract of land for a park worth $1,000,000 by paying $3,000 a year for the period of a human life, which the mortality tables fixed at 20 years, it could not accept, forsooth it could not at once pass an ordinance appropriating at the one time the whole of the installments.    Such a construction would tend to defeat the broad policy of the state, designed to encourage and assist the municipality in establishing public parks.    Courts should ever lean to that interpretation of a statute which would further the object of the legislation in preference to a construction based on purely artificial rules.    Tittmann v. Edwards, 27 Mo. App. 492; Wanschaff v. Society, 41 Mo. App. 206. Where power is given by a statute, the courts should, as a rule, hold that anything necessary to make it effectual is given by implication.    Sheidley v. Lynch, 95 Mo. 487, 8 S. W. 434.

The power to take and hold this property for the very purpose

designated by the devise being expressly granted in the charter to the city, the only objection thereto arises on the manner of its acceptance by the city, as to whether the ordinance should have been broader. So long as the parties thereto are content with the acceptance, and the city is paying the annuity required under ordinances making the annual appropriations in the customary mode for annual application of the general fund for the current year, and the charter authorizing the payment out of the general fund, it is not perceivable that these plaintiffs have any standing in court on the ground that the devise is void.

In this view of the case, it is not necessary that the court should consider the question raised as to whether the last clause of said paragraph of the will is void for uncertainty. The city having accepted, the contingency on which said clause would become operative can never arise.

The bill is dismissed.