## GEORGE LA MONTE & SON v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Second Circuit. April 8, 1929.

No. 269.

Wood, Molloy & France, of New York City (Henry P. Molloy and Melville J. France, both of New York City, of counsel), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and C. Colden Miller, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This petition seeks to review a determination of the Board of Tax Appeals, adjudging deficiencies of income and profit taxes for the years 1920, 1921, and 1922 on petitioner's return for these years. On January 30, 1905, George La Monte & Son, a New York corporation, and the Kingsland Paper Mills, a New Jersey corporation, competitors in business, agreed to and did consolidate their business under the terms of an agreement whereby the Kingsland Paper Mills' charter was amended, so as to change the name to George La Monte & Son, with an authorized capital of $342,800. There was paid for the Kingsland Paper Mills, including machinery, fixtures, tools, trade-marks, designs, business good will, and real estate, $125,000, and $25,000 for merchandise or cash to be contributed. This was one-half of the common stock, and was issued to the Kingsland interests. The manufacturing plant of the New York corporation of George La Monte & Son, including all its machinery, fixtures, tools, trade-marks, designs, leasehold interests in real estate, and good will was fixed at a valuation of $167,800, which, together with an additional $25,000, to be contributed in merchandise or cash, was turned in for $150,000 of common stock and $42,800 special stock, to be issued to the La Monte interests.

Immediately upon giving the bill of sale, it was agreed that the new corporation would make a contract with George La Monte and George M. La Monte (the La Monte interests) "to pay them each year during the corporate existence a sum equal to 12½ per cent. of the net profits of the business for each year before any dividends shall be declared, less such amount as shall be paid upon the special stock issued to the said George La Monte and George M. La Monte." The special stock had no voting powers, but was entitled to receive 8 per cent. per annum. On February 6, 1905, the stockholders of the new corporation approved the consolidation and in terms voted and approved the contract, agreeing to pay the 12½ per cent. to the La Monte interests.

The agreement of February 6, 1905, between the La Monte interests and the new corporation, provided that the new corporation "will pay them during the existence of the said first party a sum equal to 12½ per cent. of the net profits of said first party, less the amount paid on the special stock of the party of the first part, by the party of the first part." As this money was paid, it

was the practice of the board of directors of the new corporation to recite, in its resolutions appropriating dividends, that this 12½ per cent. had been paid as a charge against the business. It also had been the practice of the petitioner to charge to the profit and loss account the payments made in accordance with this agreement; and from February, 1905, to December 31, 1920, there was paid $240,612.48. The amount of these payments in 1920 was $17,304.11; in 1921, $7,368.89; in 1922, $28,270.73. The proprietary interest of the La Montes in this agreement changed by transfer by will and agreements without relation to the respective holdings in the special stock.

The question here presented is whether, by Revenue Act of 1918, § 234 (40 Stat. 1057, 1077), and the act of 1921 (42 Stat. 227, 254), a deduction is permitted of these sums as "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The payment was made by the petitioners each year because it was contractually obligated to do so. It was a charge upon the business because of the agreement made at the time of consolidation, to bring to the business assets in excess of those owned and contributed to the consolidation by the Kingsland Paper Mills. This obligation, created by the contract of February 6, 1905, was a consideration paid for assets, and undoubtedly helped the consolidation. It was not considered and agreed upon as a method of distributing income or dividends. It did not rest with the board of directors to say whether it would or would not be paid each year. It was purely a payment from the business to equalize for the additional capital assets brought into the merger. The board approved the contract when made. It resolved "that said payment be made * * * and charged as an expense of the business of this company." This additional asset was regarded as valuable as a contribution. The items which were of chief value in the consolidation were for the parties to agree upon, and the price paid may not be questioned now after the income tax law became effective. A royalty paid by a corporation to one of its officers, also a majority stockholder, for the use of the patent upon an article manufactured and sold by the corporation, is deductible as a business expense provided the amount paid is reasonable. This and similar transactions are common, where tangible and intangible assets are conveyed. Royalties, measured by a share of the profits resulting or stated, have been considered reasonable. In the matter of the Appeal of Webb Press Co., Ltd., 3 B. T. A. 247, the Commissioner contended that the payment of royalties was in fact a distribution of earnings and profits under the guise of royalties. The Board of Tax Appeals pointed out that, even though royalties may be a profitable arrangement to the taxpayer, such agreement, if bona fide and reasonable, can be regarded as an expense of the business. In Budd v. Budd (C. C.) 59 F. 735, a devisee of realty to a city which in terms provided that the city pay the devisee's widow annually a given sum, was held to be a charge upon the property which the city was obliged to pay. Here we have a method of measuring and determining the amount of the annual charge to which the taxpayer was bound. It is not the method of determining the amount of the charge which is controlling, or even of importance; it is the character and nature of the charge.

We are referred to Becker Bros. v. United States (C. C. A.) 7 F.(2d) 3, where the government sued for excess taxes, and a stockholder in the corporation, a general manager, had a contract giving him a salary of 85 per cent. of the net profits. This amount the government refused to deduct in determining the net income. The jury found a reasonable salary alone should be deducted. This court held the corporation may deduct from its income all the ordinary and necessary expenses incurred in carrying on the business, including reasonable compensation for its officers and employees; but if the corporation pays extraordinary salaries, distributing the profits of the business in the guise of salaries, such salaries are not ordinary and necessary expenses which may be deducted. We said that the government was not bound by any resolution of the corporation, or by the method of keeping books, upon the question of whether the payment is salary or a division of surplus.

In Mobile & Ohio R. R. v. Tennessee, 153 U. S. 486, 14 S. Ct. 968, 38 L. Ed. 793, the state of Tennessee imposed a tax upon the railroad, and the railroad claimed its property exempt under the charter. By the charter, the capital stock was exempt, and the road and fixtures were to be exempt for 25 years, and no tax was ever to be paid which would reduce the dividends below 8 per cent. The court below held the exemption void, and the last clause void, because of the impossibility of construing it. It was held that the clause was not vague and ambiguous; that the term "dividend" meant a portion of the profits set apart for ratable division.

222

The dividends can be paid out of profits alone, and profits are what remains after defraying every expense.

In Traylor Eng. & Mfg. Co. v. Lederer (C. C. A.) 271 F. 399, the plaintiff sought to recover taxes paid under the Munitions Tax law. 39 Stat. 780. It claimed that profits paid to two individuals, under an agreement whereby the plaintiff received money and aid in getting munition contracts in return for profits, should be deducted from the amount taxed. It was held that payment of profits under the circumstances was not a valid deduction. The profits so distributed in no way entered the cost of manufacturing munitions, and could not be regarded as an expense of manufacture deductible from the gross amount received from sales in determining taxable net profits. Deductions may not be made as an expense, where no compensation is rendered. Jacobs & Davies v. Anderson (C. C. A.) 228 F. 505. But where an agreement was made years before the income tax law was passed, and it was deemed fair by the parties who entered into it to make a charge against the business, that we regard as an expense of the business which is an ordinary and a necessary expense under the statute.

The Commissioner should have allowed the deductions. Reversed.