Darco Realty Corporation v. Commissioner.
Darco Realty Corp. v. Commissioner
Docket No. 72287.
United States Tax Court
T.C. Memo 1961-110; 1961 Tax Ct. Memo LEXIS 239; 20 T.C.M. (CCH) 544; T.C.M. (RIA) 61110; April 18, 1961
*239 Held, that an amount paid by petitioner in 1955, purporting to be a "finder's fee" paid pursuant to a resolution of the board of directors in 1927 for services rendered in 1927 by its principal stockholders and officers for "finding" the petitioner's principal asset, a lease, did not represent a payment for services rendered, but, rather, constituted a distribution of profits by petitioner, and that therefore such payment is not deductible as an ordinary and necessary business expense under section 162(a) of the Internal Revenue Code of 1954. Myron A. Finke, CPA, 60 E. 42nd St., New York, N. Y., for the petitioner. Paul D. Barker, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, *240 Judge: The respondent determined a deficiency in income tax for the taxable year 1955, in the amount of $7,652.44. The issue is whether petitioner is entitled to deduct an amount of $16,000, claimed to be a finder's fee, as an ordinary and necessary business expense under section 162 of the Internal Revenue Code of 1954. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. The petitioner is a corporation organized on September 23, 1925, under the laws of the State of New York, with its principal office at 299 Madison Avenue, New York 17, New York. Its Federal income tax return for the calendar year 1955 was filed with the district director of internal revenue, Upper Manhattan, New York. The original stockholders of the petitioner and number of shares held by each from time of organization until shortly before September 30, 1927, were as follows: Stockholder
No. of Shares
Samuel A. Herzog
77 1/2
Sidney Wilde
12 1/2
David S. Herzog
10
Total
100 During the period from organization until September 30, 1927, Darco did not engage in any business activities, had no income, and had no assets *241 except $500 paid in for the 100 shares of capital stock. On May 5, 1923, United Cigar Stores Company of America, as lessee, entered into a ground lease with the owners of property located at 745-7th Avenue, New York, New York, which called for a rental of $30,000 per year. On July 1, 1924, a corporation known as 745-7th Avenue Corporation, as sublessee, entered into a sublease with United Cigar Stores Company of America, covering this property. Prior to September 4, 1925, Saco Realty Corporation, hereinafter referred to as Saco, was organized, the controlling interest therein being owned by Samuel A. Herzog, Edgar A. Levy, Sidney Wilde, and David S. Herzog. On that date Saco, as sublessee, entered into a sublease with 745-7th Avenue Corporation covering the property at 745-7th Avenue, for a term commencing September 1, 1925, and expiring May 9, 1943, at a net annual rental of $75,000 with option to renew for two additional terms of 20 years each. On or about June 21, 1927, the stockholders of Saco sold all their stock of that corporation to the Delev Corporation, in which they had no interest. By assignment dated September 30, 1927, United Cigar Stores Company of America *242 assigned and transferred to 745-7th Avenue Corporation its original lease dated May 5, 1923, covering the property at 745-7th Avenue, subject to the sublease dated July 1, 1924, between United Cigar Stores Company of America and 745-7th Avenue Corporation. About a month prior to September 30, 1927, a dummy corporation, Kansas Realty Corporation, which Samuel Herzog had been accustomed to using in the course of his real estate operations, entered into a contract for the purchase of the stock of 745-7th Avenue Corporation. In such contract the purchaser agreed to pay $191,750 in cash and to assume and pay a mortgage on the lease of $109,700. The lease at that time was also subject to a security deposit of $75,000, which had been made by Saco to 745-7th Avenue Corporation at the time the sublease was executed on September 4, 1925. This contract was assigned by Kansas Realty Corporation to the petitioner just prior to September 30, 1927, and on that date the petitioner purchased the stock pursuant to the contract. Since up to that time the only funds owned by the petitioner consisted of the $500 which had been received upon issuance of its stock, it financed the stock purchase by loans *243 made to it by several individuals as follows: Edgar A. Levy
$154,800
Samuel A. Herzog
84,800
Jeremiah L. Murphy
25,000
Samuel L. Brown
5,000
Frances Herzog
5,000
Sidney Wilde
20,000
David S. Herzog
15,000
$309,600
The amount thus received was sufficient to complete the purchase of the stock, since the $75,000 deposit which Saco had made was not required to be repaid at that time. David S. Herzog is Samuel Herzog's brother and Frances Herzog is Samuel's wife. Murphy, Brown, and Wilde are not related to Levy or the Herzogs. Samuel A. Herzog was president and general manager of the petitioner. The minutes of a meeting of the directors of petitioner held on September 21, 1927, show that Edgar A. Levy was elected vice president and assistant general manager, that Stanley M. Isaacs was elected secretary, and that Sidney Wilde was elected treasurer. Such minutes also contain the following: Mr. Wilde further reported that by the terms of the contract for the purchase of the stock of 745-7th Ave. Corporation it will be necessary for this corporation to provide the sum of $310,000: $200,000 for the stock, and $110,000 to pay off a mortgage on the leasehold *244 which is now due. That he had arranged with various individuals, 10 to 12 in all, to lend to the company various sums aggregating the required $310,000 upon the following conditions: (a) One-half of the capital stock of the company is to be issued to said lenders who shall be permitted to subscribe therefor at par value in amounts pro rata to their respective loans. (b) The loans made to the company by said individuals shall bear interest at 6% and shall be repaid with such interest quarterly or semi-annually, out of the operating earnings of the property, or out of the proceeds of any sale thereof; and the company shall pay interest on said loans before voting any salaries to its officers and before declaring any dividends on its capital stock in excess of 6% per annum; and the company shall employ all its earnings in excess of 6% on the capital stock of the company, paid out or reserved for dividends, in reduction pro rata of the principal of said loans until same are completely repaid, and if not fully paid by September 30, 1937, the holders of 2/3 of the remaining indebtedness may require the company to sell said leasehold at public auction. (c) Edgar A. Levy and Samuel A. *245 Herzog shall each receive for their services in negotiating for and acquiring said property (the leasehold) for the company, and agreeing to administer the property by acting respectively as Vice-President and Assistant General Manager and President and General Manager of the company so long long as the company owns said property or for such shorter term as the company desires, one-quarter (1/4) of the profits realized from the operation and/or sale of said property after first deducting the aforesaid loans, with accrued interest. As security for the foregoing compensation agreement, Edgar A. Levy and Samuel A. Herzog, or their assigns, shall be permitted, in consideration of services rendered to the company, to subscribe for the remaining 50% of the capital stock at par, and may also participate as lenders and be permitted to subscribe for additional stock upon the same terms as the other lenders. There was no written agreement or evidence of the arrangement set forth in paragraph (c) of the above minutes other than the minutes themselves. At or about the time these advances were made the shares of stock were reallocated, transfers at $5 per share being made as follows: Samuel *246 A. Herzog transferred to Edgar A. Levy 43 2/3 shares; Sidney Wilde transferred to Edgar A. Levy three shares and to Jeremiah L. Murphy 4 1/6 shares; and David S. Herzog transferred to Edgar A. Levy 3 1/3 shares, to Samuel L. Brown 1 1/3 shares, and to Frances Herzog 1 1/3 shares. As a result of these transfers, the capital stock of petitioner was held as follows: Stockholder
No. of Shares
Edgar A. Levy
50
Samuel A. Herzog
33 5/6
Jeremiah L. Murphy
4 1/6
Samuel L. Brown
1 1/3
Frances Herzog
1 1/3
Sidney Wilde
5 1/3
David S. Herzog
4
Total
100
In 1927, 745-7th Avenue Corporation was dissolved and the petitioner acquired all of its assets including its principal asset, the leasehold on the property at 745-7th Avenue, and assumed all of its liabilities. Thereafter the petitioner has engaged in no other activities except those relating to the lease. Up to May 1943, it paid rental of $30,000 per year. At that time it renewed the lease for a period of 20 years, but only after the settlement of a lawsuit in which the owner of the property resisted the renewal. Thereafter it paid a rental of $33,000 per year. Throughout the years, including the taxable year *247 1955, Saco continued to be the sublessee and petitioner received from it rental each year in the amount of $75,000. The funds which had been loaned to the petitioner in 1927 to finance the purchase of the 745-7th Avenue Corporation stock had been fully repaid by May 31, 1939. Up to that time interest at six percent had been paid on the outstanding amounts, and the petitioner had paid dividends on the $500 par value of capital stock at a rate of six percent, or a total of $30 per year. In 1939 the petitioner's capital stock was held as follows: Stockholder
No. of Shares
Edgar A. Levy
36 1/4 [1]
Samuel A. Herzog
33 5/6
Stanley M. Isaacs
7 1/2
Leo S. Herzog
6 1/4
Jeremiah L. Murphy
4 1/6
Samuel L. Brown
1 1/3
Frances Herzog
1 1/3
Sidney Wilde
5 1/3
David S. Herzog
4
Total
100
On May 11, 1939, Samuel *248 A. Herzog and Edgar A. Levy addressed a notarized letter to the petitioner, which contained the following: Please be informed that the undersigned SAMUEL A. HERZOG is the holder of record of certificate No. 18 for twenty-five (25) shares of the capital stock of your corporation, and that the undersigned EDGAR A. LEVY is the holder of record of certificate No. 14 for 12 1/2 shares and certificate No. 15 for 12 1/2 shares of the capital stock of your corporation. That said stock is held by each of the undersigned, respectively, as security for the faithful performance by your corporation of its agreement to pay each of the undersigned, his heirs, personal representatives and assigns, compensation for services rendered by him to your corporation, set forth in the minutes of the meeting of the Directors of your corporation held on the 21st day of September, 1927; viz, one-quarter (1/4) of all net income of the company subsequent to the repayment of certain loans with accrued interest (the last instalment of which is about to be repaid), including especially all income derived from the operation, sale or exchange of the leasehold of the premises at the N. E. Corner 49th Street & Seventh *249 Avenue, Borough of Manhattan, New York City, and irrespective of any reserves for depreciation, etc. That the beneficial ownership in the aforesaid stock held by the undersigned Samuel A. Herzog is as follows - JEREMIAH L. MURPHY, to the extent of 4 1/6th shares SAMUEL L. BROWN, to the extent of 1 1/3rd shares FRANCES HERZOG, to the extent of 1 1/3rd shares SIDNEY WILDE, to the extent of 5 1/3rd shares DAVID S. HERZOG, to the extent of 4 shares SAMUEL A. HERZOG, to the extent of 8 5/6th shares and that the beneficial ownership in the aforesaid stock held by the undersigned Edgar A. Levy is as follows - STANLEY M. ISAACS, to the extent of 7 1/2 shares LEO S. HERZOG, to the extent of 6 1/4 shares EDGAR A. LEVY, to the extent of 10-5/12 shares AND YOU ARE HEREBY DIRECTED to pay over to said beneficial owners above named, and their respective heirs, personal representatives and assigns, all of the dividends which shall be declared upon the aforesaid capital stock of said corporation, so long as but only so long as your corporation, its successors and assigns, pays and continues to pay to each of the undersigned, his heirs, personal representatives and assigns, the *250 compensation to which each of the undersigned and his representatives are entitled for said services by the undersigned under said agreement of September 21, 1927, and as hereinabove set forth. In 1939, the petitioner commenced paying Samuel A. Herzog and Edgar A. Levy amounts pursuant to paragraph (c) of the minutes of the meeting of the board of directors of petitioner held on September 21, 1927. Samuel A Herzog died on January 16, 1946, and thereafter the petitioner made such payments to his heirs or distributees. Edgar A. Levy died on January 29, 1958, and thereafter the petitioner made such payments to his estate. From 1939 to 1959, inclusive, the petitioner paid out the following amounts to Herzog and Levy or their successors, each receiving one-half of the amounted listed: Date
Amount
1939
September
$ 6,000
December
4,500
1940
March
3,000
June
3,000
September
3,000
December
3,000
1941
March
3,000
June
3,000
September
3,000
December
3,000
1942
March
3,000
June
3,000
September
3,000
December
9,000
1943
March
3,000
September
6,000
December
7,000
1944
March
3,000
June
3,000
September
3,000
December
9,000
1945
March
3,000
June
3,000
September
3,000
December
8,000
1946
June
8,500
December
8,500
1947
June
8,500
December
8,500
1948
June
8,500
December
8,500
1949
June
$ 8,500
December
8,500
1950
June
8,500
December
8,500
1951
June
8,500
December
8,500
1952
June
8,500
December
8,500
1953
June
8,500
December
8,500
1954
June
8,000
December
8,000
1955
June
8,000
December
8,000
1956
June
8,000
December
8,000
1957
June
8,000
December
8,000
1958
June
8,000
December
8,000
1959
December
16,000
Total
$335,500
*251 In each year these payments were deducted by the petitioner in its Federal income tax return. Agents of the respondent made several examinations of the petitioner's records in years prior to 1955 and did not disallow the claimed deductions. Over the above period of years the petitioner distributed as dividends approximately the same amounts as were paid to Samuel A. Herzog and Edgar A. Levy as set forth above. In 1955 the petitioner declared and paid a dividend of $160 per share, a total of $16,000. Throughout the years, including the year 1955, the dividends were paid in accordance with the directions of Samuel A. Herzog and Edgar A. Levy contained in their letter of May 11, 1939. During the year in question, 1955, the capital stock of the petitioner was held as follows: [2]
Shares
Edgar A. Levy
25
Frances Herzog and David S.
Herzog, agents
25
Jeremiah L. Murphy
4.16-2/3
Samuel L. Brown
1.33-1/3
Frances Herzog
3.61-19/36
Sidney Wilde
6.43-3/4
David S. Herzog
5.59-371/576
Julien S. Levy
9.37-1/2
Edgar I. Levy
15.62-1/2
Trustees of Trust f.b.o. Frances
Herzog
1.71-7/48
Sibyl Herzog Grubstein
.71-179/576
Rose A. Herzog
.71-179/576
Nina A. Herzog
.71-179/576
Total
100
*252 At the time of the acquisition of the lease by petitioner, and thereafter, Samuel A. Herzog was the sole proprietor of a substantial business of buying and selling real *253 estate. He employed his brother, David S. Herzog, and Sidney Wilde and paid them a flat salary and a percentage of profits. He also employed a staff of bookkeepers, stenographers, and typists. Wilde had been associated with Herzog since 1911. Customarily, licensed real estate brokers would submit to Herzog or his employees offering sheets relating to properties. If Samuel Herzog was interested, David Herzog and Wilde would examine the property and neighborhood and make a complete report to Herzog, including calculations of income and expense. If Samuel Herzog decided that the property was worthwhile he would invest therein and often interested others to also invest. It had been his practice, in instances involving the investment of capital by others, to require that a so-called "finder's fee", be paid to him, which often consisted of a percentage of the profits of the enterprise in addition to the profits from his own investment, such fee to be paid after the sums loaned, plus interest, had been repaid. Edgar A. Levy also operated a real estate business in the same manner as Samuel Herzog. Levy employed Stanley Isaacs, his wife's cousin, in a position similar to the one Wilde occupied *254 with Samuel Herzog. In the conduct of their respective real estate businesses, Samuel A. Herzog and Edgar A. Levy customarily organized corporations, generally with small capitalization, to hold each separate piece of property, in order to limit liabilities. The petitioner was one of several corporations so organized and used. Several months prior to September 30, 1927, brokers brought to the attention of Sidney Wilde and Stanley Isaacs the proposition for the acquisition of the stock of 745-7th Avenue Corporation. Wilde conducted most of the negotiations, but the brokers talked with both Wilde and Isaacs. Wilde and Isaacs recommended acquisition of the stock to Samuel Herzog and Edgar Levy, their respective employers. Samuel A. Herzog and Edgar A. Levy were interested in acquiring the stock of 745-7th Avenue Corporation in order to obtain the underlying lease on the property at 745-7th Avenue, which was then held by United Cigar Stores Company of America, but which it was contemplated would be transferred to 745-7th Avenue Corporation. The sublessee was required to pay the real estate taxes, insurance, water charges, and certain other charges. It was necessary that the petitioner, *255 as assignee of the lessee's interest in the original lease, enforce these obligations of the sublessee and see that the sublessee did not otherwise violate any of the provisions of the lease. Wilde and others, including S.A.H. Management Corporation (a corporation controlled by Samuel A. Herzog), attended to these matters. Generally there was but little activity to be carried on by the petitioner, although occasionally something would arise which would require the attention of Samuel A. Herzog or Edgar A. Levy. Wilde customarily consulted with Herzog once or twice a week with respect to petitioner's business. Wilde also consulted with Levy at times, but Levy devoted less time to petitioner's business than Herzog. In connection with the lawsuit respecting the right of renewal of the lease in 1943, Herzog, who was a non-practicing lawyer, devoted approximately 9 months to study and consultation with several lawyers. Levy, who was also a lawyer, also did considerable work in that connection. In the real estate business it is, and has been, customary for a "finder" of a good investment to receive from investors a "finder's fee". Such fee has no relation to the usual broker's commission. *256 The finder may have discovered the investment himself and have satisfied himself that the investment was a good one, or it may have been brought to his attention by a broker. The finder's fee varies in amount and form. It may be an immediate cash payment or it may be deferred until a later date. The finder himself may invest with others in the property, and he customarily receives a fee which may be in addition to the return to him as an investor, lender, or manager of the property. The fee may be in the form of an added share of the profits which the investors pro rata relinquish to the finder. Neither Samuel A. Herzog nor Sidney Wilde ever received any compensation as an officer or employee of the petitioner. David S. Herzog was president of petitioner in 1955. He never received any salary as president. In its income tax return for the taxable year 1955 the petitioner reported total income (from rents) of $42,000 and taxable income of $21,965.75. Among deductions claimed was $16,000 claimed as "Payment under Acquisition Agreement". The return shows deficits in earned surplus and undivided profits of $2,234.98 as of the beginning of the year and $2,852.96 as of the end of the *257 year. In the notice of deficiency the respondent disallowed the claimed deduction, stating: It is held that the deduction claimed under other deductions in the amount of $16,800.00 on your return for the year 1955 is disallowed in the amount of $16,000.00 as not being an ordinary and necessary business expense within the purview of Section 162 of the Internal Revenue Code of 1954. The amount of $16,000 paid in the year in question to Edgar A. Levy and to the heirs or distributees of Samuel A. Herzog in accordance with the provisions of the minutes of the meeting of the board of directors of petitioner held on September 21, 1927, did not constitute payment made by petitioner for services rendered by Herzog and Levy in 1927 in "finding" for the petitioner the lease covering the property located at 745-7th Avenue, but, rather, constituted a distribution by petitioner of its profits, and, therefore, such amount did not constitute an ordinary and necessary expense paid or incurred by the petitioner in the taxable year in carrying on its trade or business. Opinion The petitioner contends that the amount of $16,000 paid by it in the year in question, 1955, *258 represents payment of a bona fide "finder's fee", and that as such it is deductible as an ordinary and necessary business expense under section 162(a) of the Internal Revenue Code of 1954. [3] The respondent contends that it does not represent compensation for services rendered, but, rather, constitutes a distribution of profits by the petitioner. He alternatively contends that, even if this payment and others made in other years constituted compensation for services rendered, such payments, at least to the extent of $16,000 paid in 1955, have not been shown by petitioner to be reasonable in amount, and are in fact clearly excessive. The payment of $16,000 made in the year in question, 1955, was made in accordance with the minutes of a meeting of the board of directors of the petitioner held on September 21, 1927, which provided *259 that Samuel A. Herzog and Edgar A. Levy should receive for their services in negotiating for and acquiring the leasehold for the petitioner, and agreeing to administer the property by acting as president and general manager and vice president and assistant general manager, respectively, one-fourth of the profits realized from the operation or sale of the leasehold, after the loans made to the corporation had been repaid with interest. Such payments were to continue "so long as the company owns said property or for such shorter term as the company desires." Over the period 1939 through 1954 a total of $255,500 had been so paid. The petitioner claims that the expenditure was "ordinary" in that the payment of finder's fees is common in real estate ventures, and that it was "necessary" in that the petitioner could not have originally obtained the income-producing lease without entering into an agreement to pay the finder's fee. It is well established that any payment arrangement between a corporation and a stockholder, and particularly a major stockholder with his normal power of control, is always subject to close scrutiny for income tax purposes so that an amount will not be deducted *260 as purported compensation when in reality it constitutes a distribution of profits, and that this poses essentially a question of fact. Heil Beauty Supplies v. Commissioner, (C.A. 8), 199 F. 2d 193, affirming a Memorandum Opinion of this Court. The petitioner presented witnesses who testified that it is customary in the real estate investment business for investors to pay a "finder's fee" for services of the "finder" in bringing the investment to them, that the fee may vary in amount or form, that it may be a deferred payment, and that it is not unusual for the finder to also invest along with others in the property found and receive a finder's fee paid pro rata by the investors out of profits. However, their testimony does not establish that the arrangement made under the particular circumstances here was the usual finder's fee arrangement. As we understand their testimony, it is to the effect that usually the investors either pay an immediate cash fee, or give the finder an interest in the transaction or let him invest at a reduced price, or agree to pay the finder a percentage of their profits. [4]
*261 In the instant case Samuel A. Herzog and Edgar A. Levy each conducted a substantial real estate business and each was accustomed to investing in real property, using corporations to hold the separate investments. From 1924 to June 21, 1927, they were stockholders of Saco, which was a sublessee of the property located at 745-7th Avenue, and hence they were aware of the property and the ground lease in question. Some months prior to September 30, 1927, they and their employees became aware of the possibility of purchasing the stock of 745-7th Avenue Corporation, which was to acquire the original lease, and it was their desire to obtain the stock of that corporation in order to obtain such lease. They effected their plan by having the stock purchased by the petitioner and then liquidated the 745-7th Avenue Corporation. Edgar A. Levy loaned the petitioner $154,800 and Samuel A. Herzog loaned it $84,800, aggregating $239,600 of the total of $309,600 loaned to the petitioner. Thus, Levy furnished 50 percent of the money loaned and Herzog furnished about 27.4 percent. Herzog's wife loaned $5,000, his brother, David, loaned $15,000, and Sidney Wilde, one of Herzog's employees, loaned $20,000. *262 The only lenders, who apparently were not related by blood or by association with Levy and Herzog, were Murphy who loaned $25,000 and Brown who loaned $5,000. According to the minutes of the directors' meeting held on September 21, 1927, one-half of the 100 shares of capital stock of the petitioner was to be issued pro rata to all the lenders. It would thus seem that of these 50 shares Edgar A. Levy would be entitled to 25 shares and Samuel A. Herzog would be entitled to about 13 2/3 shares. In addition, such minutes state that, as security, Levy and Herzog, or their assigns, should be permitted in consideration of services rendered to the company, to subscribe for the remaining 50 percent of the stock at par. Thus, at that time Edgar Levy was entitled to hold 50 shares and Herzog was entitled to hold 38 2/3 shares. Levy did receive 50 shares, but Herzog received only 33 5/6 shares. There is no explanation for Herzog's receiving a lesser number of shares than contemplated by the minutes. Later, in 1939, Herzog and Levy, in the notarized letter mailed to petitioner, stated that of the 25 shares held by Herzog as security, 8 5/6 shares were held by him beneficially for himself, and *263 that of the 25 shares so held by Levy, 10 5/12 shares were held by him beneficially for himself. If the 1939 letter is taken as showing the intent existing in 1927, it would appear that it was the intention that Edgar A. Levy was to be the beneficial owner of 35 5/12 shares and that Samuel A. Herzog was to be the beneficial owner of about 22 1/2 shares. The amount paid in for stock was nominal, being $5 per share, or a total of $500. The record does not show why these two men, who furnished the petitioner approximately 77 percent of the money necessary to acquire the lease, should see fit to take a lesser percentage of the equity ownership of the corporation and permit the other individuals, who contributed only a small portion of the needed capital, to acquire a greater percentage of the equity in the corporation than their contributions would warrant. In any event, there can be no question that Herzog and Levy were in fact the principal investors and that they controlled the petitioner through their stockholdings and their positions as principal officers. The situation thus presented is entirely different from the situation described by the witnesses in which a finder is customarily *264 paid a fee for his services to the investors. Herzog and Levy were themselves the principal investors, and in accordance with the usual practice of utilizing corporations to hold their investments, they utilized the petitioner. Thus, if it were considered that they rendered any service, such service would be in effect a service rendered principally to themselves. On this record we cannot conclude that the arrangement for paying them was in accord with the ordinary custom in the real estate business. Nor do we think that it was necessary for the petitioner to agree to pay Herzog and Levy these amounts. They were the ones primarily interested in the investment, they actually furnished most of the capital needed, and it is logical to conclude that the utilization of the petitioner to hold the lease was in accord with their usual custom of utilizing corporations to hold their investments. The fact that there was a relatively small amount of funds furnished by others not related to them, does not, in our opinion, require or justify a different view. It is our conclusion that the amount of $16,000 paid by the petitioner in 1955 did not constitute a payment in consideration for any services *265 rendered to the petitioner by Herzog and Levy, but, rather, constituted a distribution by the petitioner of its profits. As such, it is not deductible by the petitioner as an ordinary and necessary business expense. The petitioner argues that the payment may not be considered as a distribution of profits since the distribution was not pro rata among the stockholders. Insofar as the corporation is concerned, and therefore for present purposes, it is immaterial whether the distribution constituted a taxable dividend in the hands of the recipients, but it may be pointed out that it is well established that a distribution may constitute a taxable dividend whether the corporation goes through the formality of declaring a dividend and irrespective of whether the distribution is pro rata among the stockholders. See Irving Sachs, 32 T.C. 815, affd. (C.A. 8) 277 F. 2d 879, certiorari denied 364 U.S. 833, and cases cited therein. We have carefully considered the petitioner's contention that, viewed as of the time that the arrangement was made, the provision for payment of the fee was reasonable and at arm's length, and have examined the line of cases *266 cited, typical of which is George LaMonte & Son v. Commissioner, (C.A. 2), 32 F. 2d 220, in which contractual arrangements between stockholders and their corporation have been recognized as arm's-length transactions, resulting in the allowance of deductions to the corporation. Each case must be decided in the light of its own facts and circumstances. The cases cited are not applicable here. For the reasons stated hereinabove, we are of the opinion that the arrangement here involved was not one providing for reasonable compensation for services rendered to the petitioner. It may be added that no claim is made that any portion of the $16,000 paid in the year in question was paid as compensation for any services rendered by any of the recipients thereof in such year. Decision will be entered for the respondent. Footnotes
1. Fifty shares of stock had been issued in the name of Edgar A. Levy in 1927, whereas Stanley M. Isaacs and Leo S. Herzog did not hold any stock in 1927. This indicates that sometime during the interim Edgar A. Levy transferred 7 1/2 shares to Stanley M. Isaacs and 6 3/4 shares to Leo S. Herzog, but the record contains no information in respect thereto.↩
2. In the probate of the estate of Samuel A. Herzog it was represented to the surrogate's court that 25 shares were held as security and could not be distributed, and the court in its decree permitted it to be held by Frances Herzog and David S. Herzog as agents. Edgar I. Levy is the son of Edgar A. Levy. He purchased 9 3/8 shares in December 1947 from his father for $60,000 and purchased 6 1/4 shares in June 1953, from the estate of Leo S. Herzog. The purchases were made with knowledge of the provisions of the minutes relating to the payments to be made to his father and to Samuel A. Herzog. Julien S. Levy is a brother of Edgar I. Levy (and son of Edgar A. Levy). He purchased his stock at the time his brother Edgar made his first purchase and for the same price. Sibyl Herzog Grubstein is a niece of David Herzog. She and Rose A. Herzog and Nina A. Herzog became stockholders as distributees under the will of Samuel A. Herzog. Murphy, Brown, and Wilde are not relatives of any of the other stockholders.↩
3. Section 162(a) provides in part: (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *.↩
4. Edgar I. Levy testified as follows: A. A finder's fee is either a cash payment that is made when you form the group; you buy a piece of property for $100,000 and turn it over to the group for $150,000 and you have made $50,000 in the transaction at the start, or the way we prefer to do it, after the people get their money back with interest, say we have a 20 per cent interest and they have an 80 per cent interest, we will get a third of the profits of the 80 per cent in addition to our profits on our 20 per cent of any profits made by the venture. Jesse J. Secoles, a real estate operator and builder, testified as follows: Q. When outside capital is obtained, how is the proposition usually filed? A. As a rule it is used possibly - a corporation is formed and various individuals or people get stock in it and when they get an outside individual they generally give it out in the form of debenture bonds so if Mr. Jones wants to interest himself in a particular proposition, he may subscribe to a certain percentage with the understanding he buy so much additional in the form of debenture stock. It is then returned to him and it is liquidated and he gets his money back. Q. How about the finders? A. As a rule they may get a percentage of the deal or percentage of the stock or buy the stock at cost and they are not sometimes required to buy as much debentures as an outsider is.↩