**Effie SEVREMES, Executrix of the Estate of Bennie J. Sevremes, and Effie Sevremes, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4072.**

United States District Court
W. D. Kentucky,
at Louisville.

Oct. 30, 1962.

Samuel Steinfeld, Harry Lee Meyer, Louisville, Ky., for plaintiffs.

Wm. E. Scent, U. S. Atty., Louisville, Ky., and John M. Hammerman, Dept. of Justice, Washington, D. C., for defendant.

SHELBOURNE, District Judge.

This action was instituted by Bennie J. Sevremes and Effie Sevremes, husband and wife, on November 15, 1960, seeking to recover the sum of $3,466.69 alleged to have been erroneously assessed

as additional income tax due for the years 1955, 1956, and 1957. During the pendency of this action, Mr. Sevremes died and Mrs. Sevremes, executrix of his estate, was substituted as plaintiff in his stead.

The assessment made by the Commissioner of Internal Revenue resulted from the disallowance as deductions certain sums the plaintiffs paid to E. T. Murphy and Blanche Murphy in 1955, 1956, and 1957 while plaintiffs were operating a tavern known as "Bennie's Place."

By agreement of the parties, the case was submitted to the Court on a stipulation of facts and briefs of counsel. The Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. May 4, 1946, Bennie J. Sevremes sold the tavern known as "Bennie's Place" to E. T. Murphy and Blanche Murphy. The agreed price for the business and the real estate was $30,000.00 plus an additional amount for the inventory. The sale was consummated and the Murphys took possession on July 1, 1946.

2. May 20, 1948, the Murphys sold the business and real estate back to Bennie J. Sevremes and his wife, Effie, for an agreed price of $32,500.00 plus an additional amount for the inventory. The fourth clause of the contract covering the sale provided that the buyer "shall retain ownership, possession and control of the property and business and operate the same for at least two (2) years and during said time and thereafter until said property and business is disposed of by him shall pay to 'SELLERS' the following amounts: [a formula determining the percentage of net income payable to the sellers is set forth], the amounts to be paid to be determined annually, based upon the year's business, and due and payable in cash at the termination of each annual period."

3. The fifth clause of the contract provided that after the expiration of the two-year period the Murphys were granted a right of first refusal in the event the plaintiffs decided to sell the business and real estate. If the Murphys exercised this right, they were bound to pay plaintiffs the same percentage of net income that the plaintiffs had agreed to pay the Murphys and for the same period of time that the plaintiffs had owned and operated the business.

4. Pursuant to the terms of the fourth clause of the contract, plaintiffs paid the Murphys $1,679.26 for the year ending June 30, 1955; $6,219.40 for the year ending June 30, 1956, and $1,843.96 for the year ending June 30, 1957. The plaintiffs treated these payments as deductible business expense on their tax returns under the title "Commissions," which was the same treatment given payments to the Murphys for the years 1949–1954. During the years 1949–1956, the Murphys treated the payments as ordinary income on their tax returns.

5. February 21, 1958, the Murphys filed suit in Jefferson Circuit Court demanding an accounting of the percentage of net income due them under the fourth clause of the contract. In settlement of the suit Mr. and Mrs. Sevremes paid $25,000.00 to the Murphys and the Murphys quitclaimed and released all interest in "Bennie's Place" to them. In the 1948 transaction, the initial payment of $32,500.00 plus an additional amount for the inventory, the yearly payments of the percentage of net income, and the $25,000.00 paid in settlement of the lawsuit total approximately $99,000.00.

6. The tavern was located in Jefferson County near the Meade County line and a short distance from the Fort Knox Military Reservation. During the period it was owned by the Murphys, its value was enhanced by the fact that the sale of intoxicating beverages was made illegal in Meade County and the tavern became "First Chance – Last Chance" for persons living in or traveling through that county.

7. Deficiency assessments amounting to $4,563.57 were made against the plaintiffs for the years 1955, 1956, and 1957.

Of that amount, $3,466.69 resulted from the Commissioner's disallowance of the $9,742.62 paid to the Murphys during those years as an ordinary and necessary business expense.

8. November 16, 1959, plaintiffs paid the total amount of the deficiency assessments with the interest due thereon. Claims for refund in the amount of $3,466.69 were timely filed and, on June 1, 1960, plaintiffs were notified by registered mail of the disallowance of their claims.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this action. Section 1346(a) (1) of Title 28 United States Code.

Plaintiffs contend that they were entitled to deduct the payments made to the Murphys either as a business expense or as a sharing of profits among joint venturers. Webb Press Co., Ltd., 1925, 3 B.T.A. 247, and George La Monte & Son v. Commissioner, 2 Cir., 1929, 32 F.2d 220, are cited to support the contention that the payments were business expenses. However, both of those cases are distinguishable from the case at bar.

In the Webb Press case, the taxpayer was held to be correct in deducting certain royalties paid for the *use* of patents as business expense. No question was presented concerning payments made toward the *purchase* of patents. The same is true in the LaMonte case.

The LaMonte case was cited by the taxpayer in Imperial Type Metal Co. v. Commissioner, 3 Cir., 1939, 106 F.2d 302, a suit in which the taxpayer had agreed to pay five per cent of the profits of its business to three partners who had transferred all the assets of their partnership to the taxpayer. The taxpayer treated the payments as a necessary expense in carrying on its business. The Board of Tax Appeals concluded that the payments were made by the taxpayer for assets acquired by it and disallowed the deductions. At page 304 of its opinion affirming the decision of the Board of Tax Appeals, the court said:

"Petitioner relies upon the case of George LaMonte & Son v. Commissioner, 2 Cir., 32 F.2d 220, in which the facts were somewhat similar. The deductibility of payments made for the purchase of capital assets was not considered in that case, however. Consequently it cannot be deemed authority in support of the petitioner's position here. Our conclusion is that the Board properly held the so-called royalty bonus expense not deductible."

The cases of Burton-Sutton Oil Co. v. Commissioner, 1946, 328 U.S. 25, 66 S. Ct. 861, 90 L.Ed. 1062; Commissioner v. Southwest Exploration Co., 1956, 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347, and Hamme v. Commissioner, 1953, 4 Cir., 209 F.2d 29, certiorari denied 1954, 347 U.S. 954, 74 S.Ct. 679, 98 L.Ed. 1099, are also distinguishable from the instant case. Those cases all considered the question of the "economic interest" reserved in leases or sales and the right to a depletion allowance because of such retention. The case here does not turn on whether the Murphys retained such an interest in "Bennie's Place" that, had it been an oil well, they would be entitled to a depletion allowance on their share of the net income.

The contract between the plaintiffs and the Murphys entered into on May 20, 1948, admittedly was for the purchase of the tavern. It contains no provisions which negate the idea that the payments made pursuant to the terms of the fourth clause were a part of the purchase price, as well as the initial payment of $32,500.00.

The fact that the payments were required by the contract does not necessarily make them a deductible expense to the plaintiffs. In Corbett Investment Co. v. Helvering, 1935, 64 App.D.C. 121, 75 F.2d 525, a widow was entitled to monthly payments out of income from real estate devised to her grandsons by

her husband. She subsequently released her claim against her husband's estate in consideration of the personal obligation of her grandsons to make the monthly payments. Later the grandsons transferred the real estate to a corporation which assumed their liability to their grandmother. The court held that the corporation's payments to the widow were capital items and not deductible by the corporation.

The case of Edwards v. Commissioner, 10 Cir., 1939, 102 F.2d 757, is somewhat similar. In that case a father and son held partnership property as joint tenants with right of survivorship. On the death of either partner, the survivor was to pay the deceased partner's widow a specific amount per month out of the net profits of the business. The court held that after the death of the father the son became "the sole owner of the partnership, and all of the income therefrom was his income and subject to a tax, and the payments made to his mother were capital expenditures, or payments made for the right of survivorship and, therefore, were not deductible as an ordinary business expense."

Vermont Transit Co. v. Commissioner, 2 Cir., 1955, 218 F.2d 468, certiorari denied 1955, 349 U.S. 945, 75 S.Ct. 873, 99 L.Ed. 1271, appears to be decisive of whether plaintiffs' payments to the Murphys can be deducted as business expenses. In that case bus franchises were sold outright but the contract also provided that part of the consideration would be based upon a percentage of the earnings from the franchises for five years. The percentage of earnings paid was held to have been expanded for the acquisition of capital assets and not deductible as a business expense. To the same effect are Helvering v. Elbe Oil Land Co., 1938, 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904, and Commissioner of Internal Revenue v. Remer, 8 Cir., 1958, 260 F.2d 337.

■■ It is concluded that the plaintiffs' contention that the payments of a percentage of their net income for the years of 1955, 1956, and 1957 to the Murphys are deductible as business expense is without merit. Nor can the plaintiffs prevail on their contention that they and the Murphys were engaged in a joint venture. The only basis for such contention is the fact that the Murphys received part of the income from the business. The Murphys advanced no capital, had no voice in the management of the business, and were not obligated to suffer any losses that it might have incurred. The fact that they received a portion of the income from the business did not make them partners with the plaintiffs. Gant v. Commissioner, 1959, 6 Cir., 263 F.2d 558.

For the reasons set forth herein, plaintiffs' complaint should be dismissed and an order to that effect is this day entered.