Harold M. Stiles and Margaret M. Stiles, Husband and Wife v. Commissioner.
Stiles v. Commissioner
Docket No. 2177-65.
United States Tax Court
T.C. Memo 1967-106; 1967 Tax Ct. Memo LEXIS 152; 26 T.C.M. (CCH) 501; T.C.M. (RIA) 67106; May 12, 1967
*152 Petitioner purchased a trade name including any goodwill attached thereto, and as a sole proprietor doing business under that name promoted the sales of a device for blending colors of paint. Sales were made in the years 1960 through 1965. Held: The installment payments made in 1961 and 1962 for the trade name were for acquiring a capital asset and are not deductible as ordinary and necessary business expenses, nor as depreciation. Harold M. Stiles, pro se., Hillsborough, Calif. Harry M. Asch, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax as follows: Year
Deficiency
1961
$2,812.61
1962
503.38
1963
195.59
The deficiency for 1963 is conceded. The only issue to be determined is whether certain amounts paid by petitioner - $7,900 in 1961 and $1,999.33 in 1962, are deductible as ordinary and necessary expenses, or as depreciation of a capital asset. All other adjustments determined by respondent have been conceded by petitioners or, as in the case of the claimed medical deductions, may be computed under Rule 50. Findings of Fact The petitioners reside at Hillsborough, California. They filed joint income tax returns for the calendar years 1961, 1962, and 1963 with the district director of internal revenue at San Francisco, California. Margaret M. Stiles is a party only because she filed a joint return with her husband. Accordingly, Harold M. Stiles will hereinafter be referred *154 to as petitioner. Capital Equipment Lessors, herein reierred to as Capital, is a California corporation engaged in the business of leasing equipment for industrial use. Union Machine Company, herein referred to as Union, is a manufacturer of machines for industrial use. In 1958 and 1959 Union was in the process of developing a custom tinting machine for producing paint colors with mechanical controls. The device was named the Color Gun and was exhibited at a paint industry show in 1959. The petitioner, Harold M. Stiles, was employed by Capital in 1958 and 1959 as a salesman in the promotion of industrial equipment leasing. Capital had an agreement or understanding with Union to assist Union in the promotion of the color gun and to develop a market for it. Petitioner, as an employee of Capital, was working upon this promotion. Capital set up a separate division for this purpose to which all expenses attributable to the color gun program were charged. Capital gave the name Autoblend Products Company to this division and registered the name. This name was used on all promotional and advertising matter relating to the device. At the end of 1959 Capital had charged to the Autoblend *155 division expenses aggregating $15,250. Part of this represented a portion of petitioner's salary or drawing account. Other charges were for advertising, photographs, and supplies. The officers of Capital were not desirous of continuing the promotion of the color gun, but petitioner desired to undertake it on his own account. Capital agreed to allow petitioner to do this if he would repay Capital the amount charged to the Autoblend division, to allow petitioner six months to test the market before undertaking the obligation, and to transfer ownership of the registered name to him. Petitioner was to be free to make his own arrangement with Union for promoting and selling the color gun. Prior to January 1, 1960, no sales of the device had been made. As of January 1, 1960, Capital and petitioner entered into an agreement as follows: * * *
WHEREAS, CAPITAL has been and is now engaged in the promotion and development of manual, semi-automatic and automatic paint dispensing machines, including other allied products, in the expectation of selling and/or leasing said products to business enterprises and the general public, and; WHEREAS, Capital has been and is now engaged in the *156 promotion and development of said products, as aforesaid, under the fictitious name and style of AUTOBLEND PRODUCTS COMPANY, and; WHEREAS, it is the intention of the parties hereto that STILES undertake the promotion and development of the aforesaid products through, to and including the 30th day of June, 1960 on a trial basis and that, as consideration therefor, CAPITAL shall assign, transfer and sell to STILES and STILES shall purchase from CAPITAL the sole and exclusive right to use the said fictitious name. NOW, THEREFORE, IT IS AGREED AS FOLLOWS: PART I. DEFINITIONS A. The following names and terms shall be deemed to mean and include the following: 1. CAPITAL EQUIPMENT LESSORS is a California Corporation including any and all divisions and subsidiaries thereof, whether partially or wholly owned by CAPITAL, and including its assigns, transferees and successors in interest. 2. HAROLD M. STILES shall mean HAROLD M. STILES as an individual, HAROLD M. STILES doing business under the firm name and style of AUTOBLEND PRODUCTS COMPANY, a sole proprietorship, HAROLD M. STILES as a partner in AUTOBLEND PRODUCTS COMPANY, a co-Partnership, HAROLD M. STILES as an employee, officer *157 or director of AUTOBLEND PRODUCTS COMPANY, a corporation. 3. PRODUCTS shall mean any and all manual, semi-automatic and automatic paint dispensing machines, including other allied products, now or hereafter manufactured by Union Machine Company, 934 Brannan Street, San Francisco, State of California, or by any division or subsidiary thereof, whether partially or wholly owned by said Union Machine Company. 4. PROMOTION AND DEVELOPMENT shall be deemed to mean and include any business activity or enterprise undertaken by STILES, including any and all advertising, any and all sale and/or Lease promotion, and and all solicitation of prospective customers of said products, and any and all other business activity and enterprise reasonably calculated to develop and expand the sale and/or lease of the aforesaid products. PART II. FICTITIOUS NAME A. CAPITAL covenants and warrants that all right, title and interest in the fictitious name AUTOBLEND PRODUCTS COMPANY is owned by CAPITAL and that no other person or company possesses any right in said name or to the use thereof, except to the extent such right may arise hereafter by operation of law. PART III. PROMOTION AND DEVELOPMENT
*158 A. STILES hereby covenants and agrees to devote himself entirely and exclusively to the promotion and development of the products as above defined under the fictitious name of AUTOBLEND PRODUCTS COMPANY from the date of execution hereof through, to and including the 30th day of June, 1960. B. It is understood and agreed that STILES may undertake the promotion and development of said products as HAROLD M. STILES doing business under the firm name and style of AUTOBLEND PRODUCTS COMPANY, a sole proprietorship, or as HAROLD M. STILES, a partner in AUTOBLEND PRODUCTS COMPANY, a Partnership, or as AUTOBLEND PRODUCTS COMPANY, a corporation, but in no event shall STILES use any other name in the promotion and development of said products, as aforesaid, for the term of this Agreement. C. Irrespective of what business entity or form STILES may adopt as a basis for the promotion and development of said products it is understood and agreed that the obligation to pay the total purchase price, as hereinbelow provided and set forth, shall be and continue as a personal obligation of STILES individually. PART IV. PURCHASE TERMS AND PAYMENT A. CAPITAL does hereby assign, transfer and *159 sell to STILES and STILES does hereby purchase from CAPITAL the sole and exclusive right to the fictitious name AUTOBLEND PRODUCTS COMPANY including all goodwill attached thereto. Payment for the sole and exclusive right to use the said fictitious name including all goodwill attached thereto shall be made by STILES to CAPITAL in accordance with and subject to the following paragraphs: 1. In the event STILES shall continue the promotion and development of said products beyond the 30th day of June, 1960 STILES shall deliver to CAPITAL on the 1st day of July, 1960 a negotiable promissory note in the exact form and substance of that certain negotiable promissory note attached hereto and made part hereof, and STILES shall thereafter undertake payment thereof in accordance with the terms and schedule therein contained. 2. In addition to the principal and interest amounts to be paid by STILES to CAPITAL in accordance with and subject to the terms and schedule of said negotiable promissory note, as above provided, STILES shall pay to CAPITAL the sum of Fifteen Hundred Twenty-five Dollars ($1525.00) in the event the gross sales of said products shall be equal to or greater than Three Hundred *160 Thousand Dollars ($300,000.00) for the years 1960 and 1961. 3. In the event STILES shall not continue the promotion and development of said products on and after the 1st day of July, 1960 STILES shall on said date notify CAPITAL in writing accordingly and this Agreement shall from the date said notice is received be terminated and without further force and effect. * * *
PART VII. CERTIFICATE OF DISCONTINUANCE CAPITAL shall on or before the 15th day of February, 1960 execute a Certificate of Discontinuance of the fictitious name AUTOBLEND PRODUCTS COMPANY and shall promptly deliver a conformed copy thereof to STILES. * * *
The note referred to in the contract was dated July 1, 1960, was in the principal amount of $15,250 with interest at 10 percent per annum, and was to be paid in monthly installments commencing July 1, 1960, and ending December 1, 1961, in amounts according to a schedule, as follows: July 1, 1960
$ 762.48
August 1, 1960
627.08
September 1, 1960
622.92
October 1, 1960
618.75
November 1, 1960
614.58
December 1, 1960
610.42
January 1, 1961
1,168.75
February 1, 1961
1,159.90
March 1, 1961
1,151.04
April 1, 1961
1,142.18
May 1, 1961
1,133.33
June 1, 1961
1,124.48
July 1, 1961
1,115.63
August 1, 1961
1,106.77
September 1, 1961
1,097.92
October 1, 1961
1,089.06
November 1, 1961
1,180.21
December 1, 1961
1,071.35
*161 Petitioner registered his ownership of the name "Autoblend Products Company." He negotiated with Union and made an arrangement for promoting the color gun during 1960 and the following years. He went into business as a sole proprietorship, and signed and delivered to Capital the note dated July 1, 1960 called for in the above agreement. The color gun was manufactured by Union under a patent held by the president of Union. The sales volume of the product was approximately $234,000 in 1960, $340,000 in 1961, $174,000 in 1962, $74,000 in 1963, $46,000 in 1964, and $37,000 in 1965. Petitioner made the payments to Capital in 1960, as provided in the contract, starting July 1, 1960. The decline in sales began about the middle of 1961, apparently due to the competition of other manufacturers in the market. After sales began to fall off in 1961, petitioner negotiated a reduction in the amount of the payments required under the contract and note to Capital. The payments actually made to Capital by petitioner in 1961 totalled $7,900, of which $6,375 was considered by petitioner as payments on the note and $1,525 was considered as the additional amount owed by reason of the fact that total *162 sales in 1961 exceeded $300,000. The amount paid by petitioner to Capital in 1962 was $1,999.33. In reporting his income from the business carried on as Autoblend Products Company, petitioner deducted $7,900 as "product development expenses" in 1961, and $1,999.33 as "product research and development" expenses in 1962. Respondent disallowed these deductions on the ground it had not been established that the amounts constituted ordinary and necessary business expenses. The $7,900 paid by petitioner to Capital in 1961 and the $1,999.33 paid by petitioner to Capital in 1962 were not ordinary and necessary expenses of petitioner's business, nor were they payments for a capital asset for which depreciation is allowable. Opinion Petitioner's primary contention is that the amounts paid by him to Capital in 1961 and 1962 were ordinary and necessary business expenses paid or incurred in carrying on his trade or business and as such are deductible under the provisions of section 162 of the Internal Revenue Code of 1954. [1] In the alternative, assuming that such expenditures are not deductible as ordinary and necessary business expenses, petitioner contends that *163 he is entitled to amortize the amounts paid Capital "as product development expense, which were actually research and promotional expenses, over the estimated life of the business venture, which was reasonably determinable at the time operations commenced." We do not agree with either of petitioner's contentions. The answer to petitioner's first contention is to be found in the agreement entered into between petitioner and Capital on January 1, 1960. This agreement recited that Capital had been and was then engaged in the promotion and development of paint dispensing machines "under the fictitious name and style of Autoblend Products Company," that it was the intention of the parties that Stiles should undertake the promotion and development of said product, on a trial basis, to and including June 30, 1960, and that Capital assign, transfer and sell to Stiles the sole and exclusive right to use said fictitious name. Part IV A of the agreement provided as *164 follows: A. CAPITAL does hereby assign, transfer and sell to STILES and STILES does hereby purchase from CAPITAL the sole and exclusive right to the fictitious name AUTOBLEND PRODUCTS COMPANY including all goodwill attached thereto. * * * As payment for the "sole and exclusive right to use the said fictitious name Autoblend Products Company, including all goodwill attached thereto," it was agreed that, in the event Stiles should continue the promotion and development of the product beyond June 30, 1960, he would deliver to Capital a negotiable promissory note in accordance with the form attached thereto. The note referred to was dated July 1, 1960, and was signed by Stiles. It provided for payment of the principal sum of $15,250 with interest at the rate of 10 percent per annum, payable in monthly installments commencing July 1, 1960, in the amounts set forth therein. The agreement also provided for overriding payments in the amount of $1,525 in the event gross sales of the product equaled or exceeded $300,000 in 1960 and 1961. It is clear from the terms of the agreement itself that what petitioner acquired and paid for was a capital asset - the right to use the fictitious or *165 trade name "Autoblend Products Company" and the right to all the goodwill which attached thereto. In Seattle Brewing & Malting Co., 6 T.C. 856, 868, affd. 165 F. 2d 216 (C.A. 9), rehearing denied 166 F. 2d 326, this Court stated: The right to use a trade name is a monopoly, as is a copyright or a patent. It carries with it the right to control its use in connection with a manufactured article and to prevent any competition that might destroy its value. It is a property right and the trade name is property, no less so because it is intangible. [Emphasis supplied.] Here also, as the terms of the agreement indicate, the right to use the trade name "Autoblend Products Company" was acquired simultaneously and compositely with the goodwill which attached to it. Goodwill, albeit intangible, is considered a capital asset. Rodney B. Horton, 13 T.C. 143, 149; Aaron Michaels, 12 T.C. 17, 19. See also C. F. Hubble, a Memorandum Opinion of this Court filed March 27, 1963, relied upon by respondent. Since what petitioner acquired was a property right or capital asset, it necessarily follows that the amounts paid by him in *166 1961 and 1962 for the use of the fictitious name Autoblend Products Company and the goodwill attached thereto were not ordinary and necessary business expenses and are not deductible under the provisions of section 162. The fact that a portion of the payments made in 1961 may have represented overriding payments under the contract does not affect this result. Sevremes v. United States, 209 F. Supp. 837 (W.D. Ky., 1962); Imperial Type Metal Co. v. Commissioner, 106 F. 2d 302 (C.A. 3, 1939), affirming a Memorandum Opinion of the Board of Tax Appeals. Petitioner's alternative contention is not clear. As expressed in his opening brief, he claims he is entitled to "amortize" the amounts paid Capital "as product development expense, which were actually research and promotional expenses, over the estimated life of the business venture, which was reasonably determinable at the time the operations commenced." Since neither petitioner nor Capital owned the patent under which the color gun was manufactured and neither of them manufactured it under any license or other arrangement, it is clear petitioner is not entitled to amortize any expenditures made in connection *167 with the "development" or "research" of such product. Only Union, or its president who actually owned the patent, would be entitled to expense, defer or amortize such expenditures, under section 174 of the Internal Revenue Code of 1954, and even it could not include expenditures for consumer surveys, advertising and sales promotion in the expenditures for which amortization is provided by section 174(b). See Income Tax Regulations, section 1.174-2(a)(1). On reply brief, petitioner states that "The amount of the contract with Capital represented the acquisition cost of an intangible asset which could be amortized over a foreseeable life." Presumably, petitioner is relying upon the provisions of section 167(a) of the Internal Revenue Code of 1954. [2] It is apparently his position that the intangible asset which he acquired was the market potential for the color gun and that such potential was limited by the known number of paint distributors and the competition of other manufacturers of paint dispensing equipment. *168 The difficulty with petitioner's contention is that it was not the market potential but the right to the exclusive use of the trade name "Autoblend Products Company and the goodwill which attached thereto" in the promotion and development of a market for the color gun, which was acquired by petitioner under the agreement of January 1, 1960. This was an intangible capital asset. Except for the original six months trial period, made inapplicable here by petitioner's election to proceed with the promotion and development of a market for the color gun, the agreement of January 1, 1960 contains no restriction or limitation on the time or method of use of the trade name Autoblend Products Company and the goodwill attached thereto. In his reply brief, petitioner has quoted the first sentence of section 1.167(a)-3 of the Income Tax Regulations. He has failed, however, to mention the succeeding portions which are more particularly applicable here. Section 1.167(a)-3, including the portion quoted by petitioner, provides as follows: INCOME TAX REGULATIONS. § 1.167(a)-3 Intangibles. If an intangible asset is known from experience or other factors to be *169 of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life. No deduction for depreciation is allowable with respect to goodwill. * * * Not only does the agreement of January 1, 1960 contain no restrictions on the use of the trade name and goodwill but, as the evidence indicates, petitioner made substantial sales of the color gun in 1963, 1964 and 1965. We hold that petitioner is not entitled to depreciate the amounts paid Capital in the taxable years under the provisions of section 167(a) and the Regulations. Marc Eidletz & Son, Inc., 18 B.T.A. 187, 192; Charles P. Limbert Co., 9 B.T.A. 1390, 1398. See also C. Franklin Hubble, supra. Decision will be entered for the respondent. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *↩
2. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income.↩